COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia


WILLIAM F. HOWE, III

OPINION BY

v.     Record No. 2968-97-2     JUDGE MARVIN F. COLE
                                           JULY 6, 1999

SUSAN B. HOWE


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

Ralph E. Main, Jr., for appellant.

John K. Taggart, III (Patricia D. McGraw;
Rachel L. Rust; Tremblay & Smith, LLP, on
brief), for appellee.


William F. Howe, III (father) appeals the trial judge's
determination of his monthly child support obligation.  Father
contends the trial judge erred by:  (1) granting Susan B. Howe's
(mother's) motion to reconsider the October 6, 1997 decree; (2)
denying father's motion to reconsider the November 12, 1997
decree; (3) including in father's income, for child support
calculation purposes, a $10,000 gift received by father from his
mother, which father used to discharge financial obligations
under the divorce decree; and (4) including in father's income,
for child support calculation purposes, the proceeds of father's
conversion of a life insurance policy.  For the reasons that
follow, we affirm in part, reverse in part, and remand.

Facts

Father and mother were divorced by decree of the Albemarle County Circuit Court entered on November 22, 1996. The decree provided in pertinent part: (1) Father and mother were given joint legal custody of their two children; (2) father was to pay child support based upon the guidelines set forth in Code § 20-108.2; (3) father's support obligation was to be modified each year in accord with the guidelines; and (4) father was to own a Northwest Mutual Life Insurance policy "as his sole and separate estate subject to the provisions of paragraph 2(C) of this decree."

The final divorce decree, under the heading of "Child Support," paragraph 2(C), entitled "Life Insurance," further provided that father was to maintain for the benefit of the children the life insurance policy through Northwest Mutual Life, which had a death benefit of $124,401. Father also agreed "to take no action that would result in less than the face value being payable at the time of his death . . . ."

## I. and II.

### Mother's Motion to Reconsider the October 6, 1997 Decree; Father's Motion to Reconsider the November 12, 1997 Decree

On March 1, 1997, father notified mother that he had recalculated his child support obligation and that he was decreasing child support payments by $307 per month. Mother

disputed the recalculation, and she filed a show cause order with the court on May 5, 1997. Father then filed a motion requesting modification of his child support obligation, contending that his income had changed and that mother had been receiving income which she had not disclosed to father. Father also asserted that the final divorce decree did not reflect the final agreement of the parties concerning the applicability of the term "earned income." He also argued that his child support obligation should be recalculated in accordance with the child support guidelines as interpreted by Frazer v. Frazer, 23 Va. App. 358, 477 S.E.2d 290 (1996), a case which was decided after the initial agreement between the parties had been reached. Under this interpretation, father's spousal support payments to mother would be added to mother's income and deducted from father's income.

Mother argued that no triggering event had occurred which required a recalculation of child support, but, if such an event had occurred, the recalculation should not include the addition of spousal support in mother's gross income, thereby keeping her income at zero, as provided in the final divorce decree.

The trial judge held an ore tenus hearing on August 26, 1997. At that hearing, father testified that he had cashed in the Northwest Mutual Life Insurance policy and had replaced it with a policy of equal death benefit for the children. Father

testified that he received $25,564 for the conversion, which he used to purchase a house with his second wife.

Father also stated that, on December 20, 1996, he received a $10,000 Christmas gift from his mother. He testified that he used this money to pay marital debts and attorneys' fees as directed by the trial judge in the divorce decree. Father stated that, on April 4, 1997, he received a $10,000 loan from his mother, which he used to finance his new house and which he intended to repay.

On October 6, 1997 the trial judge issued a letter opinion and order, deciding the issues raised at the August 26, 1997 hearing. He rejected the argument that the divorce decree did not reflect the parties' agreement but agreed that a recalculation of father's monthly child support obligation was in order based on our decision in Frazer. The trial judge, therefore, recalculated mother's income to include the amount of spousal support paid her by father.

In a footnote in his letter opinion, the trial judge stated that he did not include the gift money in father's income "since the year of receipt was not given." The footnote further stated that he did not include the amount of the insurance proceeds in father's gross income "since the amount of the [insurance] payment which is attributable to [father]'s gross income cannot be determined."

On October 20, 1997, mother filed a motion for reconsideration of the October 6, 1997 decision, again requesting that the trial judge hold that the divorce agreement governed the issues and that no circumstances had arisen requiring recalculation of the monthly child support. Mother requested, in the alternative, that the trial judge increase father's gross income by the amount of the gifts he received from his mother and the insurance proceeds. She requested that the trial judge increase father's monthly child support accordingly.

The trial judge granted the motion for reconsideration without a hearing and vacated his October 6, 1997 decree. On November 12, 1997, the trial judge issued another decree and letter opinion. The judge found that he had erred in not including the $10,000 gift from father's mother in the calculation of father's gross income. The judge concluded that he had properly excluded the $10,000 loan proceeds from father's gross income. Therefore, the trial judge included in father's gross income $10,000 of the $20,000 received by father from his mother.

The trial judge also included the insurance proceeds of $25,554[1] in father's 1997 gross income for child support

---

[1]The amount of the insurance proceeds is either $25,564, according to father's testimony, or $25,554 according to the trial judge's letter opinion.

calculations to be made on March 1, 1998. The judge then recalculated father's new total monthly child support obligation based on these findings. Father filed a motion to reconsider on November 24, 1997. Apparently, the trial judge denied father's motion, although the record contains no order addressing the motion. Father appealed to this Court.

Father contends the trial judge erred in granting mother's motion to reconsider his October 6, 1997 order and in vacating that order. Rule 1:1 provides that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." By decree dated October 27, 1997, the trial judge granted mother's motion for reconsideration and vacated the October 6, 1997 decree. Therefore, the trial judge timely vacated the decree in accordance with Rule 1:1. Further, whether to grant mother's motion lay within the sound discretion of the trial judge. See Code § 20-108; see also Morris v. Morris, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986). The trial judge did not abuse his discretion in considering the motion.

Father also contends the trial judge erred in failing to grant his motion to reconsider the November 12, 1997 decree. Father sought the further opportunity to introduce evidence

concerning the use of the gift money and the use of the

insurance payment.  The record does not contain an order

indicating that the trial judge ruled on father's motion to

reconsider.  We find, however, because of the view we take of

these issues, we need not address these issues further.

### III.  Gift Funds

> The starting point for a trial court in
> determining the monthly child support
> obligation of a party is the amount as
> computed by the schedule found in Code
> § 20-108.2(B).  This amount is determined
> according to a schedule that varies
> according to the combined gross income of
> the parties and the number of children
> involved.

Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894,

896 (1991).  The Code establishes a rebuttable presumption that

the schedule is appropriate under the circumstances.

> However, after determining the presumptive
> amount of support according to the schedule,
> the trial court may adjust the amount based
> on the factors found in Code §§ 20-107.2 and
> 20-108.1.  Deviations from the presumptive
> support obligation must be supported by
> written findings which state why the
> application of the guidelines in the
> particular case would be unjust or
> inappropriate.

Id.

Code § 20-108.2(C) defines gross income as

> income from all sources, and shall include,
> but not be limited to, income from salaries,
> wages, commission, royalties, bonuses,
> dividends, severance pay, pensions,
> interest, trust income, annuities, capital

- 7 -

> gains, social security benefits except as listed [elsewhere], workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, spousal support, rental income, gifts, prizes or awards.

Clearly, the statute defines gifts as income. Father argues that, because the December 20, 1996 $10,000 gift was used to discharge financial obligations created by the divorce decree, the gift money should not be counted as part of his gross income for purposes of child support calculations.

Father also argues that three factors listed in Code § 20-108.1(B) rebut the presumption that the amount of child support is correct and support the finding that application of the child support guidelines would be "unjust or inappropriate." Two of the factors reference "obligations" and "marital debt."[2]

However, assuming arguendo that father used the gift proceeds to discharge such "obligations" and "marital debt," father's use of the gift proceeds is irrelevant to the characterization of the gift as part of father's "gross income." These obligations and debts were distributed in a presumably equitable manner under the initial divorce decree, and this

_____

[2]Father cites Code § 20-108.1(B)(11): "Earning capacity, obligations and needs, and financial resources of each parent," arguing that the divorce decree obligations are obligations within the meaning of the statute. He also cites Code § 20-108.1(B)(14): "Provisions made with regard to the marital property under Code § 20-107.3," arguing that, to the extent the gift discharged marital debt, it satisfies the provisions respecting marital property under Code § 20-107.3.

distribution cannot be relitigated under the guise that additional income was used for their discharge. To permit debts assigned in the final divorce decree to be declared a reason for decreasing the child support amount would be tantamount to retroactively modifying the final support decree, which Code § 20-108 specifically proscribes.

Father also argues that the $10,000 gift was not part of a regular or ongoing gift program. Therefore, because future child support payments would be based on income father will not be receiving in the future, the trial judge should not have included it in the basis for determining father's child support payments.

In Frazer, 23 Va. App. at 378, 477 S.E.2d at 299-300, we stated: "Under Code § 20-108.2(C), gross income includes 'all income from all sources,' and unless specifically excluded, any income from any source is subject to inclusion." We held that, because Code § 20-108.2(C) "does not specifically exclude voluntary contributions to retirement plans from the definition of gross income," the contributions should be included in gross income for child support purposes. Frazer, 23 Va. App. at 378, 477 S.E.2d at 300.

Further, Code § 20-108.2(C) specifically states that gifts are to be included in gross income, and father admits that the $10,000 he received on December 20, 1996 was a gift. Therefore,

the trial judge correctly included the gift proceeds in father's gross income. Once the presumptive amount of child support was calculated, the trial judge could have made a "downward deviation" from the presumptive amount of child support, to the extent that Code § 20-108.1 factors indicate that the award would be "unjust or inappropriate." See id.

Moreover, when determining child support, the emphasis should be on including, not excluding, income especially where including the income more accurately reflects a parent's economic condition and financial circumstances for that year. Father can seek a modification in child support payments for the next year, if and when his income no longer includes such gift proceeds. Indeed, it is the payor parent's obligation to seek modification when a change in circumstances occurs. The trial judge is not required to speculate as to what the circumstances may be in the future. "The statutory scheme provided by the General Assembly does not contemplate automatic changes or escalator clauses." Keyser v. Keyser, 2 Va. App. 459, 461-62, 345 S.E.2d 12, 14 (1986). "'Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur.'" Solomond v. Ball, 22 Va. App. 385, 392, 470 S.E.2d 157, 160 (1996) (citation omitted). Accordingly, we find that the trial judge did not abuse his discretion in including the $10,000 gift proceeds in

- 10 -

father's gross income for the purposes of calculating father's monthly child support obligation.

### IV. Life Insurance Policy Proceeds

Father contends the trial judge erred in including the proceeds from the Northwest Mutual life insurance policy in the amount of $25,564 in his gross income for child support calculation purposes under the guidelines.

In this case, father reduced his monthly child support payment to mother. Mother filed a petition for a show cause order stating father "has arbitrarily modified [child] support, and refused to provide [mother] with documentation of reduced income." The trial court issued a show cause order ordering father to appear in court on August 26, 1997 to show cause why he should not be punished for contempt for failure to abide by the divorce decree.

Father filed a motion prior to the hearing date, stating that he received his annual bonus and this changed circumstance triggered recalculation of child support. He also alleged that mother was receiving income in addition to spousal and child support, which she was not disclosing. Therefore, father asked for a recalculation of child support.

At the August 26, 1997 hearing on the show cause order and the motion for modification, mother called father to testify concerning his income. He testified as follows:

- 11 -

Mother's Attorney:

> Now, sir, going through certain bank records
> that you have provided by discovery in this
> case, I find a deposit into your account in
> May of 1997 of $25,564. Do you know where
> that came from?

Father:

> That came from -- as you recall, Your Honor,
> when you distributed the assets in our case,
> I was to retain ownership of my insurance
> policy. And so that my wife and I could
> purchase a house for our kids, I cashed that
> in, replaced that with this policy
> (indicating), in the amount of $25,000, and
> took the cash gain from that, which was an
> asset, just like going to the bank and
> taking money out.

After the hearing, both sides presented legal memoranda on the issues. Mother initially argued that child support should not be recalculated. In the alternative, mother argued that the computation should include father's "current income, this year's bonus and the monetary gifts from his parents." She did not ask the court to include the insurance proceeds.

On October 6, 1997, the trial judge issued its letter opinion with the footnote stating that he was not including the insurance payment in father's income because "the amount of the payment which is attributable to [father]'s gross income cannot be determined."

Mother filed a motion to reconsider, again arguing that no changes in circumstances had occurred which would justify a modification in child support. However, mother then quoted the

trial judge's footnote and stated that father had testified that he received $25,554 from the insurance policy. At this point, mother for the first time asked the judge to add the insurance money into father's gross income.

The trial judge vacated the October 6, 1997 order, and, on November 12, 1997, issued a new letter opinion in which he reversed his decision and added in the $25,554 insurance proceeds in father's 1997 gross income. Father then filed a motion for reconsideration and an opportunity to present evidence on the issues. In view of the way the issue arose, that is, the trial judge first raised the question of apportioning the life insurance proceeds in his first letter opinion, father should have been permitted to present further evidence on the issue. However, mother was the party who asked that the insurance proceeds be added into father's income. The burden of proof was on mother to show how much of the insurance proceeds was income because she asked the trial court to include the proceeds in father's income. Mother failed to show what portion of the $25,554 was a return on capital as opposed to a gain. Thus, because the property was father's separate property to begin with, and, because mother failed to show what, if any, portion of the $24,554 was income under the statute, then none of the insurance proceeds should have been added into father's

gross income.  There is no evidence in the record to show any increase in the value of the policy.

Income under Code § 20-108.2 "applies to income, not to capital recoupment.  This conclusion is supported by the definition of income set forth in Code § 20-108.2(C).  Although that definition includes 'capital gains,' capital gains are by their nature profits, not returns of capital."  Whitaker v. Colbert, 18 Va. App. 202, 204-05, 442 S.E.2d 429, 431 (1994).  See also Smith v. Smith, 18 Va. App. 427, 434-35, 444 S.E.2d 269, 274 (1994) ("If husband has realized any capital gains since the court last received evidence on this matter, wife is free to request a modification of the award based on a change in circumstances.").

For the foregoing reasons, we affirm the trial judge's ruling that the gift proceeds were part of father's gross income for purposes of child support calculations.  We reverse the trial judge's decision that the life insurance proceeds were properly included in father's gross income for purposes of child support calculation.  We remand for recalculation of child support consistent with this opinion, based on the evidence already in the record.

Affirmed in part,
reversed in part,
and remanded.

- 14 -