Lisa Ann CLARY (now Barron),
Appellant,

v.

James A. CLARY, Appellee.

No. 1999–CA–002969–MR.

Court of Appeals of Kentucky.

Aug. 31, 2001.

Brief for Appellant: Karen L. Wilson, Henderson, for Appellant.

Brief for Appellee: J. Christopher Hopgood, Henderson, for Appellee.

Before DYCHE, JOHNSON and McANULTY, Judges.

*OPINION*

JOHNSON, Judge:

Lisa Ann Clary has appealed from an order of the Henderson Circuit Court entered on November 15, 1999, which denied her objections and adopted the Domestic Relations Commissioner's recommendation involving the calculation of her former husband's income for purposes of determining child support. Having concluded that the trial court erred by prorating the capital gain on the sale of James' real estate over his remaining work-life expectancy for inclusion in his "gross income" for determining child support, we reverse and remand.

The parties were married in 1982 and divorced in 1987. During the marriage, the parties had one son, who was born in August 1983. During the marriage, James was a self-employed farmer, working with his father and brother. Under the April 1987 decree of dissolution, Lisa was awarded sole custody of their child and James was ordered to pay $45.00 per week in child support. In March 1992, James' child support obligation was increased to $75.00 per week. In November 1995, James' child support payment was reduced to $50.00 per week. In January 1998, the trial court modified the custody arrangement to joint custody with Lisa having primary physical possession of the child and James paying $50.00 per week child support.

In August 1999, Lisa filed a motion seeking an increase in child support under KRS[1] Chapter 403 based on a change of circumstances. She alleged that James had increased income from a capital gain on the sale of realty. James and his second wife, Mary, had purchased a tract of land in 1990, on which they conducted farming operations. In early 1998, James and Mary were approached about selling their farm property as part of an industrial economic development project. They received $80,000.00 for granting a purchase option to the West Kentucky Regional Development Authority. The Development Authority decided to exercise the option; and on October 14, 1998, it purchased the 392.26–acre farm from James and Mary for $792,800.00, which included the $80,000.00 option fee. As reported in their 1998 tax return, James and Mary realized a capital gain of $620,181.00 on the real estate sale.

On August 19, 1999, Lisa filed a motion to modify child support seeking an increase in James' support obligation. She

asserted that his income had increased by virtue of the sale of his farm. James' response acknowledged that he and his wife had realized a $620,000.00 capital gain on the sale of their farm property and he indicated that after paying some debts, they retained $400,00.00 for purposes of investment through the services of the Old National Bank. He stated that the first year he had received a return of approximately $7,300.00 on the investment. James also said that he was employed by Crop Production Services earning $10.00 per hour, with monthly earnings of $2,388.00, and that he received $360.00 per year rental income on a six-acre tract of land he still owned. James opposed any increase in his child support payments on the grounds that the capital gain received on the sale of his property was a one-time event.

On September 7, 1999, the Commissioner held a hearing on the motion to increase child support. Lisa's attorney argued for inclusion of one-half of the capital gain from the sale of the realty as income for the year it was received by James in applying the child support guidelines in KRS 403.212. James argued that these circumstances did not qualify for modification of child support under KRS 403.213(1), which requires a showing of "a substantial and continuing change in circumstances." He asserted that his child support obligation should be based on his regular recurring sources of income, e.g., wages, rental income and investment income, and not the capital gain from a one-time sale of property.

On October 15, 1999, the Commissioner issued a report with a recommendation that one-half ($310,090.00) of the capital gain realized on the sale of the realty be included in James' income, but that this

1. Kentucky Revised Statutes.

amount be prorated over his remaining work-life expectancy to age 65. The Commissioner recommended as follows:

> The Commissioner finds the Respondent's [James'] portion (one-half) of the capital gain must be included in his gross income for purposes of calculating child support, however, the Commissioner further finds this particular event to be an anomaly and that to include the entire amount as gross income for one year, making his gross monthly income from this asset $25,833.33 (according to Petitioner's figures) would be unjust and not a fair representation of his monthly income. There is no prior history of such a high income and there is no proof there will ever again be such a high income, figured on a monthly basis. The commissioner finds, that this is a "once in a lifetime" capital gain, and should be prorated over the usual work life expectancy of sixty-five (65) years.

Since the Commissioner was unsure of James' age, she deferred calculating a firm child support amount at that time. On November 1, 1999, Lisa filed objections to the Commissioner's report concerning the calculation of James' gross income. James did not file objections to the Commissioner's report. On November 8, 1999, the circuit court conducted a hearing on Lisa's objections to the report during which the parties restated the arguments raised before the Commissioner. Following the hearing, the trial court summarily denied the objections and effectively adopted the Commissioner's report and recommendation. This appeal followed.

In 1990, the Legislature enacted the Child Support Guidelines,[2] which created a rebuttable presumption that the guideline amount is the appropriate amount of support in determining child support.[3] The guidelines are based on the Income Shares Model under the theory that a child should receive as child support the same proportion of parental income that the child would have received had the parents lived together as an intact, two-parent family.[4] The guidelines table setting forth the applicable child support obligation is based on the combined adjusted parental gross income of both parents. The trial court has discretion to deviate from the guidelines "where their application would be unjust or inappropriate."[5] The test for abuse of discretion in reviewing the trial court's decision is whether the decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.[6]

KRS 403.211(3) requires a trial court to make a written finding that application of the guidelines would be unjust or inappropriate in a particular case and it lists seven situations justifying deviation, including where the parents' combined income exceeds the guideline amounts and any similar factor of an extraordinary nature that would make application of the guidelines inappropriate.[7] At the same time, "a trial court does not have the dis-

**2.** KRS 403.210 *et. seq.*

**3.** *See generally* KRS 403.212(3) and KRS 403.213.

**4.** *Downing v. Downing*, Ky.App., 45 S.W.3d 449, 455 (2001); *see also* 16 L. Graham and J. Keller, *Kentucky Practice: Domestic Relations Law*, § 24.15 at 232 (2d ed.1997); KRS 403.211(2).

**5.** KRS 403.211(2); *Redmon v. Redmon*, Ky. App., 823 S.W.2d 463, 465 (1992); *Rainwater v. Williams*, Ky.App., 930 S.W.2d 405 (1996).

**6.** *Goodyear Tire and Rubber Co. v. Thompson*, Ky., 11 S.W.3d 575, 581 (2000); *Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999).

**7.** KRS 403.211(e) and (g).

cretion to deviate from the guidelines simply because it thinks the Legislature erred in setting the appropriate levels. Nor does it have the discretion to ignore the guidelines because it feels that important factors were ignored by the Legislature."[8] Since the interpretation of a statute is a legal question, the trial court's interpretation is subject to *de novo* review by an appellate court.[9]

Lisa argues that the trial court erred in calculating James' "gross income" for purposes of determining child support by prorating James' portion of the capital gain on the sale of his farm over his remaining work-life expectancy (approximately twenty-eight years). She relies on the specific inclusion of capital gains in the statutory definition of "gross income."

KRS 403.212(2)(b) states in relevant part:

"Gross income" includes *income from any source*, except as excluded in this subsection, and includes but is not limited to income from salaries, wages, retirement and pension funds, commissions, bonuses, dividends, severance pay, pensions, *interest*, trust income, annuities, *capital gains*, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, Supplemental Security Income (SSI), *gifts*, *prizes*, and alimony or maintenance received (emphasis added).

Lisa argues that James' capital gain of $310,090.00 should be included as income in the year it was received on an annualized basis of $25,833.33 [10] per month. She asserts it would be unjust to allow James to "enjoy financial prosperity while depriving his son the proper support."

On the other hand, James contends the trial court did not abuse its discretion in determining his child support obligation. He relies upon KRS 403.213(1), which states that a court may modify child support "only upon a showing of a material change in circumstances that is substantial and *continuing*" [emphasis added]. James argues that the calculation of child support is based on the parents' actual income on a continuing basis. He asserts that the capital gain he received was an extraordinary, nonrecurring event whereby he was able to profit from owning property which increased dramatically in value because of the development of an industrial park. Although he admits that capital gains are included in the definition of gross income, he contends that only capital gains received on a recurring or regular basis should be included for determining child support. James argues that since his capital gain should not have been included at all, the trial court did not err in including it on a prorated basis.

We note that while this precise issue is an issue of first impression in Kentucky, courts in other jurisdictions generally have construed child support statutes to include nonrecurring income.[11] For example, in

**8.** *Keplinger v. Keplinger,* Ky.App., 839 S.W.2d 566, 568 (1992). *See also Commonwealth, ex rel. Marshall v. Marshall,* Ky.App., 15 S.W.3d 396, 400–01 (2000).

**9.** *Hardin Co. Schools v. Foster,* Ky., 40 S.W.3d 865, 868 (2001); *Revenue Cabinet v. Hubbard,* Ky., 37 S.W.3d 717, 719 (2000).

**10.** This figure represents only the capital gain and not the other items of income including salary and rental income.

**11.** This Court recently thoroughly addressed the various factors a trial court should consider in setting child support when the combined parental gross income exceeds the highest level set out in the guidelines. *Downing, supra.*

*Helbling v. Helbling,*[12] the Court held that money received by the father for relocation moving expenses should be included as income despite the fact that it was nonrecurring.

Courts, by necessity, rely on past information about a child support obligor's income when calculating child support amounts. Past income is generally the best predictor of future income and child support is based upon income. The guidelines broadly define "income" to include not only wages and salaries, but nonrecurrent payments such as bonuses, severance pay, capital gains, and gifts and prizes.... There is no deduction from gross income, however, for nonrecurrent payments. No matter whether a payment is recurrent or not, the guidelines require that courts consider an obligor's net income "from all sources" when calculating child support [citations omitted].[13]

In *In re Marriage of Zisch,*[14] the Court held that a $262,000.00 capital gain from the sale of stock should be included in the father's income for determining the modification of child support. It stated that under the child support statutes, capital gains were specifically included in the definition of "gross income." The Court noted that the statutes did not directly address

the issue and prior cases had approved a variety of approaches to accounting for the receipt of money from nonrecurring sources. The Court held that capital gains should initially be included in the recipient's gross income for the year received, but the trial court could exercise its discretion to deviate from the guidelines in determining the ultimate child support obligation.[15] It stated that any deviation must be accompanied by findings specifying the reasons for the deviation, and that income generated from the capital gain in later years should be included in the obligor's income. The Court held that receipt of the capital gain constituted a "substantial and continuing" change of circumstances subject to modification, and rejected the trial court's approach of prorating the capital gain over the father's expected lifetime.[16]

In *Howe v. Howe,*[17] the Court held that a $10,000.00 Christmas gift should be included in the father's gross income in determining modification of child support. It relied on the fact that gifts were explicitly included in the statutory definition of gross income, which includes "all income from all sources." The Court noted that once the gift was included as income, the trial court had discretion to deviate from the pre-

**12.** 541 N.W.2d 443 (N.D.1995).

**13.** *Id.* at 447. *See also Longtine v. Yeado,* 567 N.W.2d 819 (1997)(holding capital gain on house after receipt of insurance proceeds following destruction of house by fire was income). *But see Burnette v. Bender,* 184 Ariz. 301, 908 P.2d 1086 (Ariz.Ct.App.1995)(capital gain on sale of commercial fishing boat not required to be included as income because not a continuing change in circumstances).

**14.** 967 P.2d 199 (Colo.Ct.App.1998)

**15.** *Id.* at 203, *See also In re Marriage of Campbell,* 905 P.2d 19 (Colo.Ct.App.1995).

**16.** *Cf. Alexander v. Alexander,* 34 S.W.3d 456 (Tenn.Ct.App.2000) (holding capital gains on

sale of stock should be included in gross income for child support, but prorated amount over number of years stock generating the gains were held by the father); *Mehne v. Hess,* 4 Neb.App. 935, 553 N.W.2d 482 (1996)(discussing various approaches to allocation of lump sum personal injury settlement and choosing to prorate amount over remaining minority of the children); *Darby v. Darby,* 455 Pa.Super. 63, 686 A.2d 1346 (1996)(holding lump sum personal injury settlement should be included in father's gross income in year received).

**17.** 30 Va.App. 207, 516 S.E.2d 240 (1999).

sumptive guideline child support obligation if it would be unjust or inappropriate.[18]

Moreover, when determining child support, the emphasis should be on including, not excluding, income especially where including the income more accurately reflects a parent's economic condition and financial circumstances for that year. Father can seek a modification in child support payments for the next year, if and when his income no longer includes such gift proceeds. Indeed, it is the payor parent's obligation to seek modification when a change in circumstances occurs. The trial judge is not required to speculate as to what the circumstances may be in the future.[19]

James analogizes his situation to that of a lottery winner and argues that his capital gains should not be included in a single year. He claims that lump sum lottery winnings are prorated over a term of years rather than in a single year. However, a review of the case law contradicts this approach to handling lottery winnings in child support cases.

In *In re Marriage of Bohn*,[20] the Court held that the $816,000.00 received by the father who chose the cash option on a $1.2 million lottery prize should be included in his gross income for child support purposes. The Court refused to create an exclusion for lottery winnings from the broad statutory definition of "gross income" and indicated the trial court had the discretion to deviate from the guidelines in determining the actual child support obligation.[21] The Court held that the principal amount of the winnings should be included in the year received and that any additional income received in subsequent years from investment of the principal amount should also be included as income when received.[22] On the other hand, lottery winnings received in periodic payments over a fixed number of years generally are included as income in the year each payment is received.[23] James' argument that lottery winnings received in a discounted lump sum generally are treated the same as periodic payments is erroneous. Unlike periodic payments, a recipient of a lump sum amount has immediate access to the funds and therefore recognition of the entire amount as income the year received is appropriate.

We believe the analysis and approach provided in the cases in the above discussion are consistent with the Kentucky Child Support Guidelines. KRS 403.212(2)(b) defines "gross income" broadly to include *income from any source* and explicitly includes capital gains. The statutes do not specifically exclude nonrecurring income and the list includes items, i.e., bonuses, gifts, severance pay, and prizes, that are typically singular, nonrecurring events. To justify modification of child support, KRS 403.213(1) requires a material change in circumstances that is substantial and continuing. We believe the receipt of a substantial amount of money that is available to the recipient for a continuing period of time constitutes a material change of circumstances. Under

**18.** *Id.* at 216, 516 S.E.2d at 245.

**19.** *Id. See also Gardner v. Yrttima*, 743 N.E.2d 353 (Ind.Ct.App.2001)(finding inheritance should be included as income and may amount to substantial and continuing change in circumstances for modification of child support).

**20.** 8 P.3d 539 (Colo.Ct.App.2000).

**21.** *Id.* at 541.

**22.** *Id.*

**23.** *See e.g., Pratt v. McCullough*, 100 Ohio App.3d 479, 654 N.E.2d 372 (1995); *In re Marriage of McCord*, 910 P.2d 85 (Colo.Ct. App.1995)

KRS 403.213, a 15% change in the amount of child support due creates a rebuttable presumption of a substantial change of circumstances. We hold that when a parent receives income from a nonrecurring event, the trial court should include that amount in the year received and then apply the guidelines pursuant to the table in KRS 403.212 to determine the child support obligation. The trial court has discretion to deviate in determining the child support obligation, especially where the combined adjusted parental gross income exceeds the uppermost levels of the guideline table. Among the factors the trial court should consider are the reasonable and realistic needs of the child, the standard of living the child enjoyed during the marriage, and the financial circumstances of the parents.[24]

Thus, we hold that the trial court abused its discretion by prorating the capital gain over James' work-life expectancy. The trial court's decision was based on the fact that the capital gain was a one-time event and that including the entire amount in one year would be an unjust and unfair representation of his monthly income. While we recognize the trial court's concerns, the fact is that James received the entire amount in a lump sum and he had immediate access and control over it. He spent a portion of the amount received and retained $400,000.00 for investment purposes. The Child Support Guidelines require the inclusion of money from a broad range of sources in the parents' gross income including regular earnings and non-recurring events. The potential for unfairness is mitigated by the trial court's authority to deviate from the guidelines in the ultimate determination of the child support obligation of each parent on a case-by-case basis. In addition, upon a motion to modify the trial court may adjust the child support obligation to reflect the fluctuation in income that results from an unusual or nonrecurring event. The trial court's attempt to prorate the large capital gain over an extended period in the first instance is contrary to the statutory definition of gross income. Furthermore, in this case, James' child support obligation will terminate in August 2001 when the parties' child reaches age eighteen unless he is still attending high school.[25] The trial court's decision substantially precluded the child from enjoying the benefits of the increase in James' financial resources. Consequently, we hold that the trial court erred in prorating the capital gain over James' work-life expectancy.

In conclusion, we affirm the trial court's order to the extent that James' portion of the capital gain on the sale of his farm was included in his gross income, but reverse its decision to prorate the amount over his work-life expectancy. On remand, the trial court in calculating the parties' annual monthly income and in applying the guidelines should include James' share of the capital gains for the year it was received, as well as James' wages and rental income. The trial court then has the authority to deviate from the guideline amounts by making specific written findings on the record that application of the guidelines would be inappropriate or unjust.

For the foregoing reasons, the order of the Henderson Circuit Court is reversed and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

---

24. KRS 403.212(5); and *Downing, supra* at 456–57.

25. *See* KRS 403.213(3).