COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Ortiz and Lorish
Argued at Norfolk, Virginia

UNPUBLISHED

CLARENCE WILLIAMS, III

v.      Record No. 1269-21-1

KATRYCE SYKES-WILLIAMS

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
SEPTEMBER 13, 2022

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Joel P. Crowe, Judge

Charles E. Haden for appellant.

No brief or argument for appellee.

Clarence Williams, III, ("husband") appeals a final order of the Circuit Court of the City of

Portsmouth that granted husband a divorce from appellee Katryce Sykes-Williams ("wife") and

resolved matters of child custody, equitable distribution, spousal support, and child support. On

appeal, husband challenges the trial court's rulings on equitable distribution, spousal support, and

child support.

I. BACKGROUND

Husband and wife originally started dating in high school and were married in 2008 when

they were twenty-one years old. They had four sons during the marriage. Husband and wife

separated on October 27, 2017. After the separation from wife in 2017, husband began a

relationship with another woman ("girlfriend"), who ultimately became pregnant by husband.

Girlfriend gave birth to a child, M.W., on April 10, 2020. At the time of trial, girlfriend and

husband were expecting a second child.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After the parties had been separated for more than one year, husband filed a complaint for divorce in the Circuit Court of the City of Portsmouth. The parties presented evidence over five days of hearings. The first three days focused on custody and visitation of the four minor children of the marriage,[1] while the final two days focused on the grounds for divorce, equitable distribution, spousal support, and child support.

Husband sought a divorce based on separation for more than one year, while wife counterclaimed for a divorce based on adultery. However, because "Wife did not present evidence from a nonparty that corroborated her testimony on adultery as required by Section 20-99(1)," the trial court held, "the Court cannot grant her the divorce on grounds of adultery, and the Court will grant the divorce on grounds of separate and apart for more than one year."

Both husband and wife requested an equitable distribution award but "indicated there were no marital assets of value and only debts" that required distribution. After classifying the parties' debts as either marital or separate, the trial court made findings of fact on the statutory equitable distribution factors in deciding how to apportion the marital debt. Based on its written findings, the trial court allocated 80% of the marital debt to husband and the remaining 20% of the marital debt to wife. Specifically, the court ruled that "Husband shall pay . . . the tax bills and the bills pertaining to the credit cards titled in Husband's name," and "Wife shall pay . . . the

---

[1] The trial court awarded "sole custody to Wife with specific visitation to Husband" and a specific holiday visitation schedule. Husband does not challenge that ruling on custody and visitation on appeal.

medical, dental, and healthcare bills, the utility bills, the private school tuition and reading

program bills, and the bill for the credit card titled in Wife's name."[2]

Wife also requested an award of spousal support. As relevant to wife's claim for spousal

support, the trial court heard evidence that husband had worked throughout the marriage as a

software engineer and had provided financially for the family throughout the entire marriage. As

of the time of the divorce, the trial court found that "Husband makes approximately $84,240 per

year through his employment." However, husband's income had varied significantly from year

to year. He "testified that in 2016 he was working for four employers, and his total salary that

year was $400,000," whereas "[i]n 2015, as evidenced by a W2 from one of his employers, he

received total compensation from just one of his employers of $115,386.93."[3] In contrast, "Wife

bore four children during the marriage and supported Husband's goals of excelling as a software

engineer by tending to the needs of and being the primary caretaker for the children."

Consequently, "for most of the marriage, Wife was absent from the job market." Based on its

findings, the trial court concluded, "After careful consideration of the above factors, the Court

finds Wife entitled to spousal support in the amount of $2,400 per month for the next five years."

The trial court also heard evidence that husband had received gifts to help pay attorney

fees in connection with the divorce proceedings. The trial judge found that the evidence showed

that husband "ha[d] received a substantial sum of gifts from his parents and Paramour's family."

---

[2] The parties also agreed to assume certain debts as their sole and separate debts without regard to whether such debts would otherwise be classified as marital or separate. For example, both husband and wife assumed sole responsibility for their individual student loan debt, some of which they incurred during the marriage. Wife's agreement to take on the entirety of her student loan debt resulted in her sole assumption of around 60% of the total outstanding debt identified by the court.

[3] Nonetheless, the trial court noted that "Husband at one point claimed his salary in 2015 was $75,000 and at another point, claimed it was $70,000." The trial court expressly found "Husband's testimony on his current financial situation to not be credible."

The trial court found that "[d]uring the October trial date on support, Husband testified his parents and Paramour's family had paid as gifts all his legal bills in full." Based on the evidence presented, including the attorney fees and costs exhibit, the trial court found that husband "must have received at least $52,202.07 in gifts from October 4, 2019 to October 3, 2020." The trial court included these gifts in the computation of husband's gross income when calculating the presumptive amount of child support under the child support guidelines. The trial court initially ordered husband to pay $2,193.42 per month in child support for the four children of the marriage, reaching this figure by applying the child support guidelines and finding that the amount provided by the guidelines "would not be unjust or inappropriate."

Husband objected to the trial court's decision not to impute income to wife, given that wife was working only part-time while taking care of the children. In response, the trial court explained that "if the Court finds that the result under the child support guidelines is unjust or inappropriate, the Court may veer from the guidelines by among other things imputing income to one of the parties." Nevertheless, the trial court ruled,

> After a thorough consideration of the 15 factors provided under Section 20-108.1, which included the imputation of income to the parties, the Court concluded the result under the child support guidelines was not unjust or inappropriate, despite the duty the parties have to earn as mu[ch] as they reasonably can for their children." Consequently, the trial court declined to deviate from the child support guidelines.[4]

Husband and wife noted objections to the trial court's rulings on custody, grounds for divorce, equitable distribution, spousal support, and child support. The trial court subsequently

---

[4] However, the trial court noted that it had not originally factored the monthly spousal support award into its computation of wife's gross income, and, consequently, the trial court reduced husband's child support obligation to $1,729 per month after including the anticipated spousal support payments in wife's gross income.

issued a letter opinion responding to and overruling each of the parties' objections before entering its final order on October 27, 2021. This appeal followed.

## II. ANALYSIS

On appeal, husband challenges the trial court's equitable distribution decision. He also raises an exhaustive assignment of error that encompasses an assortment of challenges to the spousal support and child support rulings.

### A. Equitable Distribution

Husband contends on appeal that the trial court "erred in its application of the statutory factors" under the equitable distribution statute, Code § 20-107.3(E). He specifically challenges "the court's apportionment of 80% of the marital debt to Mr. Williams and only 20% of the marital debts to Ms. Sykes-Williams," asserting that the trial court used equitable distribution "to punish Mr. Williams economically for the break-up of the marriage." Husband emphasizes that the parties obtained a "no-fault" divorce based on separation for more than one year, and he argues that "consideration of fault is clearly irrelevant for purposes of the equitable distribution statute."

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." *Wright v. Wright*, 61 Va. App. 432, 449-50 (2013) (quoting *Klein v. Klein*, 11 Va. App. 155, 161 (1990)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" *Id.* at 450 (quoting *McDavid v. McDavid*, 19 Va. App. 406, 407-08 (1994)).

In this case, the parties claimed that they had no assets, leaving only debt for the trial court to distribute.[5] The trial court found that, based on a consideration of the statutory factors, it was equitable to allocate 80% of the marital debt to husband and the remaining 20% to wife. Specifically, the trial court ordered husband to pay "the tax bills and the bills pertaining to the credit cards titled in Husband's name" and ordered wife to pay "the medical, dental, and healthcare bills, the utility bills, the private school tuition and reading program bills, and the bill for the credit card titled in Wife's name."

Code § 20-107.3(E) states, "The amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, *the apportionment of marital debts*, and the method of payment shall be determined by the court *after* consideration of the following factors[.]" (Emphasis added). One of those factors is "[t]he circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of subdivision A (1), (3) or (6) of § 20-91 or § 20-95." Code § 20-107.3(E)(5). The equitable distribution statute thus expressly *requires* the trial court to consider "[t]he circumstances and factors which contributed to the dissolution of the marriage" in fashioning an equitable apportionment of marital debt. *See id.* For example, in *Cousins v. Cousins*, 5 Va. App. 156, 158 (1987), this Court held that "[c]ircumstances and factors which may have contributed to the dissolution of a marriage, regardless of whether they constituted grounds for divorce, may be considered in weighing the equities between parties" in an equitable distribution matter. The Court therefore held that even though the divorce in *Cousins* was awarded on non-fault-based grounds, "it was proper for the trial court to consider evidence of Mr. Cousins' adultery, provided it contributed

_____

[5] The trial court found "the lack of marital assets of value suspect," citing testimony from both husband and wife indicating that they owned multiple vehicles. However, because the trial court found that "no credible evidence was introduced as to the value" of these assets, the court "decline[d] to make a division of these assets in making an equitable distribution."

- 6 -

to the dissolution of the marriage, when making an equitable distribution award." *Id.* at 159. In short, husband's argument that the trial court abused its discretion simply by considering his fault related to the dissolution of the marriage is foreclosed both by the plain language of the equitable distribution statute and by binding precedent interpreting it.

Moreover, the record simply does not support husband's argument that the trial court improperly utilized equitable distribution as a vehicle to punish husband. For example, both parties decided to separately assume the entirety of their respective student loan debt, some of which they incurred during the marriage. In its written findings on the statutory factors, the trial court stated, "The Court finds significant Wife's stipulation that she is willing to take on all of her student loan debt," because it "shows Wife's willingness to cooperate as around 60% of the total outstanding debt in Appendix A is her combined student loan debt." Due to the parties' separate assumption of each party's student loan debt, the trial judge found that the aggregate value of husband's debt obligations amounted to $129,214.25, whereas wife's amounted to $312,197.77. The trial court exercised its discretion in deciding that husband—the primary household income earner for the entire marriage—should bear the burden of paying the tax bills, while wife—the sole custodian of the four minor children—should bear the burden of paying the medical bills and the bills related to the children's private school tuition. In short, given that there is significant credible evidence in the record to support the trial court's equitable distribution decision, we simply cannot say that the trial court abused its discretion in finding that an 80/20 apportionment of the marital debt was equitable under the circumstances of this particular case.

### B. Whether to Impute Income

Husband assigns error to the trial court's decision not to impute income to wife in calculating both spousal support and child support. As it relates to spousal support, husband contends that the trial court "failed to properly consider all factors outlined in Va. Code Ann.

20-107.1(E), including but not limited to Factor 9 (the earning capacity of Defendant [wife]),” because “[t]he Court disregarded Defendant's [wife's] voluntary under employment.” As it relates to child support, husband argues that “the evidence was sufficient to prove [wife] was voluntarily under employed” and that the trial court “failed to impute for unknown reasons when calculating income for child support purposes.”

### 1. Imputation Related to Spousal Support

“The trial court has ‘broad discretion’ in the decision to award spousal support.” *Robinson v. Robinson*, 54 Va. App. 87, 91 (2009) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 845 (2008)). “That includes the ‘nature, amount and duration’ of the award.” *Id.* (quoting Code § 20-107.1(E)). “In determining ‘the nature, amount and duration of an award,’ the court must consider twelve specific statutory factors as well as any other concern ‘necessary to consider the equities between the parties.’” *Brandau v. Brandau*, 52 Va. App. 632, 638 (2008) (quoting Code § 20-107.1(E)). “Whether to impute income to a spouse seeking support is simply one component of calculating the ‘amount’ of support under the statutory factors listed in Code § 20-107.1(E).” *Id.* (quoting Code § 20-107.1(E)). “When the trial court has duly considered the Code § 20-107.1(E) factors, ‘its determination will not be disturbed except for a clear abuse of discretion.’” *Robinson*, 54 Va. App. at 92 (quoting *Fadness*, 52 Va. App. at 845).

As this Court has previously explained,

> Three of the statutory factors are directly pertinent to the question of imputation [of income]:
>
> > “earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity” [Factor 9];
> > “opportunity for, ability of, and the time and costs involved for a party to acquire the appropriate education, training and employment to obtain the skills needed to enhance his or her earning ability” [Factor 10]; and
> > “decisions regarding employment, career, economics, education and parenting arrangements made by the parties during

- 8 -

the marriage and their effect on present and future earning potential, including the length of time one or both of the parties have been absent from the job market" [Factor 11].

*deCamp v. deCamp*, 64 Va. App. 137*,* 150 (2014) (quoting Code § 20-107.1(E)(9), (10), (11)).

Here, the trial court made written findings on each of those factors. For example, under Factor 9, the trial court found that "Wife has around a year of experience as a mental health associate and around two years of experience as a phlebotomist," and "has a bachelor's degree from University of Alabama where she majored in psychology and neuroscience and minored in biology and chemistry." Under Factor 10, the trial court found that "Wife is actively seeking to increase her earning capacity through her enrollment in a physician assistant program at Eastern Virginia Medical School." Under Factor 11, the trial court found,

> Wife bore four children during the marriage and supported Husband's goals of excelling as a software engineer by tending to the needs of and being the primary caretaker for the children. As a result, for most of the marriage, Wife was absent from the job market. In contrast, Husband was in the job market for the entirety of the marriage.

Consequently, the record before us disproves husband's contention that the trial court "failed to properly consider all factors outlined in [Code §] 20-107.1(E)."

## 2. Imputation and Child Support

As it relates to child support, "[t]he starting point in any award of child support is the presumptive calculations set out in Code § 20-108.2." *Niblett v. Niblett*, 65 Va. App. 616, 625 (2015). "In calculating child support, a 'court is [first] required to determine the presumptive child support amount by using the statutory guidelines.'" *Id.* (alteration in original). Code § 20-108.1(B) establishes a "rebuttable presumption . . . that the amount of the award that would result from the application of the guidelines set out in § 20-108.2 is the correct amount of child support to be awarded." "In order to rebut the presumption, the court shall make written findings in the order, which findings may be incorporated by reference, that the application of such guidelines would be

- 9 -

unjust or inappropriate in a particular case" according to fifteen enumerated statutory factors. Code § 20-108.1(B). Among those statutory factors, Code § 20-108.1(B)(3) permits a trial court to consider "[i]mputed income to a party who is voluntarily unemployed or voluntarily underemployed" as a basis for deviating from the presumptive amount under the guidelines.

In this case, the trial court ordered husband to pay the presumptive amount under the child support guidelines, and husband asks us to conclude that this decision was an abuse of discretion. However, the trial court decided not to impute income to wife only after thoroughly considering all of the statutory factors under Code § 20-108.1(B). For example, the trial court noted that wife had sole custody of the four minor children, one of whom was only four years old and, as the trial court put it, clearly still "of tender years" at the time of divorce. When husband objected to the trial court's decision not to impute income to wife, the trial court explained that "if the Court finds that the result under the child support guidelines is unjust or inappropriate, the Court may veer from the guidelines by among other things imputing income to one of the parties." However, the court "did not find the result here to be unjust or inappropriate after lengthy consideration of all factors listed under § 20-108.1(B)." Ultimately, husband was ordered to pay $1,729 per month for the four children—an amount we certainly cannot say constitutes an abuse of discretion. In short, the trial court followed the applicable statutory framework, and its ruling has evidentiary support in the record. We simply cannot say that the trial court abused its discretion when it ordered husband to support the four children of this marriage by paying the exact amount of child support that he presumptively owed to them under the statutory guidelines. Consequently, we will not disturb the trial court's decision not to impute income to wife.

## C. Gifts as Income

Husband also contends that the trial court abused its discretion by overruling his objection "to the Court's consideration of the Plaintiff's receipt of monetary gifts for the sole purpose of

paying his attorney fees to be used in calculating income for the basis of spousal support and

child support, when the monetary gifts would not be ongoing." He also asserts that

> [t]he trial court erred in overruling Clarence Williams' Objection
> to the court considering gift funds for attorney fees absent of
> evidence of any recurring nature in determining income for
> Plaintiff but failing to factor in similar monetary gifts given to
> Defendant by her parents and others when considering her
> income.[6]

To the extent husband challenges the trial court's consideration of gifts for purposes of

deciding spousal support, Code § 20-108.1(A) plainly permitted the trial court to do so. In relevant

part, that statute provides, "In any proceeding on the issue of determining spousal support, the court

shall consider all evidence presented relevant to any issues joined in that proceeding." Code

§ 20-108.1(A). In this case, the trial court clearly made a finding of fact that husband "ha[d]

received a substantial sum of gifts" to pay his attorney fees, which the trial court found to be a

relevant circumstance. Given that the plain language of Code § 20-108.1(A) allows the trial court to

consider "*all* evidence presented relevant to *any* issues" in a spousal support proceeding, we

certainly cannot say that the trial court erred in considering the gifts husband received for his

attorney fees as it relates to the issue of spousal support in this case. (Emphasis added).

Furthermore, as explained *supra*, "[t]he starting point in any award of child support is the

presumptive calculations set out in Code § 20-108.2," *Niblett*, 65 Va. App. at 625, and "[t]he

amount of child support under the child support guidelines must be based on the parents' actual

gross income," *West v. West*, 53 Va. App. 125, 135 (2008). Ordinarily, for purposes of calculating a

person's income tax, a gift is not included in that person's gross income. *See, e.g.*, 26 U.S.C.

---

[6] The trial court found that the evidence in the record was insufficient to prove the value of any gifts to wife in this matter, noting that "unlike with the gifts received by Husband, there is not sufficient evidence for the Court to use in determining the nature and duration of parents' payments to Wife." The trial court further noted that "Husband and Wife engaged in a five-day trial, and during that period of time Husband's counsel failed to get all the appropriate facts on these gifts for the Court to be able to use it in calculating the Child Support Guidelines."

§ 102(a) ("Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."). However, for purposes of calculating child support, the term "gross income" is more broadly defined by statute in Virginia. Code § 20-108.2(C) provides:

> For purposes of this section, "gross income" means all income from all sources, *and shall include, but not be limited to, income from* salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits except as listed below, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, spousal support, rental income except as listed below, *gifts, prizes, or awards.*

(Emphasis added). It is axiomatic that "[w]hen 'a statute includes an explicit definition' of a term, 'we must follow that definition, even if it varies from a term's ordinary meaning.'" *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (quoting *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020)). Consequently, the plain language of Code § 20-108.2(C) makes clear that "'[g]ifts' are included in the computation of gross income" when determining the presumptive amount of a parent's child support obligation. *Goldhamer v. Cohen*, 31 Va. App. 728, 736 (2000); *see also Howe v. Howe*, 30 Va. App. 207, 214-16 (1999). In this way, Code § 20-108.2(C) reflects the principle that "when determining child support, the emphasis should be on including, not excluding, income," in order to maximize the pool of resources available for the benefit of a dependent child. *Howe*, 30 Va. App. at 216.

In this case, the trial court found that husband "ha[d] received a substantial sum of gifts" for his attorney fees. The trial court noted that "Husband testified his parents and Paramour's family had paid as gifts all his legal bills in full." Based on the evidence that husband had "received at least $52,202.07 in gifts" for his attorney fees, the trial court included these gifts in the computation of husband's gross income when calculating the presumptive amount under the

child support guidelines.[7]  According to the plain language of the text of Code § 20-108.2(C), the trial court did not err by including the gifts that husband received to pay his attorney fees in the calculation of husband's "gross income."[8]

### D.  Amount and Duration of Spousal Support

Husband also challenges the amount and duration of the spousal support awarded to wife, arguing that "the evidence was insufficient to support the ruling of this amount and duration, including but not limited to Defendant failed to provide any evidence of a need for support."  He further argues that "the Court failed to appropriately follow the requirements of Va. Code Ann. § 20-107.1(F) in that it failed to identify the basis for the nature, amount and duration of the award."

"A trial court is vested with broad discretion in fixing the amount of spousal support, and its decision 'will not be disturbed unless it is clear that some injustice has been done.'"  *Lapidus v. Lapidus*, 226 Va. 575, 580 (1984) (quoting *Treger v. Treger*, 212 Va. 538, 539 (1972)).  "In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award."  *Miller v. Cox*, 44 Va. App. 674, 679 (2005).  In

---

[7] In doing so, the trial court determined husband's gross income to be $136,442.07 for purposes of calculating his child support obligation.

[8] Moreover, the irregularity of the gifts as a source of income does not change our analysis in this case.  In *Goldhamer*, this Court recognized that "[a]ny type of gift is irregular income and, therefore, may or may not extend into the future."  31 Va. App. at 737.  This Court found that the child support statute "clearly includes irregular income in the gross income computation because gifts, prizes, or awards are defined as gross income" in Code § 20-108.2(C).  *Id.*  Nevertheless, if a trial court finds that "the application of the guidelines after including the gift is unjust or inappropriate, [the court] may make written findings and deviate from the guidelines based on the statutory factors in Code § 20-108.1(B)."  *Da'mes v. Da'mes*, 74 Va. App. 138, 146 (2022) (alteration in original) (quoting *Goldhamer*, 31 Va. App. at 737).  "One of the factors a trial court may consider in deciding whether to deviate is the regularity of a particular source of income."  *Cranwell v. Cranwell*, 59 Va. App. 155, 167 (2011).  Consequently, "[a]lthough the irregularity of a certain source of income for a party is irrelevant to a determination of the parties' income under Code § 20-108.2(C), such irregularity becomes relevant if the trial court subsequently considers whether to deviate from the amount of child support dictated by the statutory guidelines."  *Id.*  However, in this case, the trial court explicitly

- 13 -

addition, Code § 20-107.1(F) provides that "[i]f the court awards periodic support for a defined duration, such findings shall identify the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the court which support the award." "When the trial court has duly considered the Code § 20-107.1(E) factors, 'its determination "will not be disturbed except for a clear abuse of discretion."'" *Robinson*, 54 Va. App. at 92 (quoting *Fadness*, 52 Va. App. at 845). "Our standard for establishing such error is a showing that the court's exercise of its broad discretion was 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Northcutt v. Northcutt*, 39 Va. App. 192, 196 (2002)).

In this case, after hearing evidence *ore tenus* over five days of hearings, the trial court made findings of fact on each of the statutory factors enumerated in Code § 20-107.1(E) and detailed its findings in a letter opinion. At the beginning of the letter opinion, the trial court expressly noted that "the Court finds Husband's testimony on his current financial situation to not be credible." The trial court explained that it "made its credibility determination through its judgment of Husband's demeanor during his testimony on the marriage and his finances as well as the numerous inconsistent statements he provided during trial." The trial court found that husband had earned the primary income during the marriage while wife had primarily taken care of the four minor children. Moreover, "starting in 2014, Husband and Wife lived fairly extravagantly," and their "lifestyle was commensurate with the financial means of Husband and Wife largely due to the choice of Husband and Wife to not invest Husband's earnings in assets, in effect leaving Husband and Wife with substantial disposable income, which they did not hesitate to spend." The trial court further found that "[p]ost-separation, it is clear Wife's

found that the application of the guidelines "would not be unjust or inappropriate," and, therefore, the trial court declined to deviate from the statutory guidelines.

- 14 -

standard of living dropped dramatically," whereas "[o]n the other hand, Husband's standard of living has not dramatically changed."

In accordance with Code § 20-107.1(F), the trial court also set forth the following findings of fact in support of the defined duration of the award:

> This was a unique marriage. Husband and Wife started dating in high school and got married when they were both 21 years old. Prior to separation, they had essentially been going through adulthood together, and Husband was the monetary provider in the marriage. . . . Wife was primarily responsible during the marriage for most of the duties regarding taking care of the children, and Husband and Wife's plan throughout the marriage was for Wife to go to medical school, so she had not been working full time. Spousal support for a 5-year duration was thus necessary for Wife to, among other things, appropriately adjust to her new state of living.

Ultimately, based on its findings, the trial court concluded that the evidence justified an award of $2,400 in monthly spousal support to wife for a period of five years. In short, given that the trial court considered all of the statutory factors in Code § 20-107.1(E) and complied with the requirements of Code § 20-107.1(F), and given that its decision to award $2,400 in monthly spousal support to wife for a period of five years is neither plainly wrong nor without evidence to support it, we will not disturb that decision on appeal.

### E. Another Child's Effect on Husband's Child Support for These Four Sons

Husband also contends that the trial court erred by

> not factoring in [M.W.],[9] a natural-born child and dependent of Plaintiff, that requires Plaintiffs financial support when calculating an award of child support. Contrary to Va. Code Ann. § 20-108.1(B) the Court's Ruling did not consider Factor 1. *Actual monetary support for other family members or former family members* in that the Court failed to consider or even mention that Plaintiff had an additional biological child, in his custody, that he was providing financial support for.

---

[9] We use the child's initials in an attempt to better protect his privacy.

However, husband has not provided this Court with any arguments, any citations to authority, or any further explanation of this issue. In his brief to this Court, husband does not make any arguments in support of this portion of his assignment of error. Rule 5A:20(e) requires an appellant's opening brief to contain "the argument (including principles of law and authorities) relating to each assignment of error." "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." *Atkins v. Commonwealth*, 57 Va. App. 2, 20 (2010) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)). "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (alteration in original) (quoting *Jay v. Commonwealth*, 275 Va. 510, 520 (2008)). Husband's failure to present this Court with *any* argument in support of this assignment of error clearly runs afoul of the requirements imposed by Rule 5A:20(e).[10] Consequently, we will not disturb the trial court's ruling on appeal.

III. CONCLUSION

For all of these reasons, we do not disturb the judgment of the Circuit Court of the City of Portsmouth.

*Affirmed.*

---

[10] Despite this violation of the Rules of the Supreme Court, we note that the record certainly does not support husband's argument that the trial court failed to consider his duty to support M.W. when it determined the amount of husband's support obligation to his four other children. The trial court specifically found, "Since separation, Husband has had another baby with Paramour named [M.W.], and Paramour is pregnant again with another child. Husband will owe these children a duty of support." The trial court specifically acknowledged that "Husband owes a duty of support to [M.W.]." Given these findings of fact by the trial judge, there is simply no merit to husband's contention that the trial court "did not consider Factor 1" of Code § 20-108.1(B).