COURT OF APPEALS OF VIRGINIA


Present:    Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


GEORGE E. CRANWELL, JR.

                                                            OPINION BY
v.        Record No. 2677-10-4                      JUDGE WILLIAM G. PETTY
                                                         DECEMBER 6, 2011
ANNE E. CRANWELL, N/K/A
  ANNE CAMPBELL


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                        J. Howe Brown, Judge Designate

          Robert J. Surovell (Surovell Isaacs Petersen & Levy PLC, on brief),
          for appellant.

          Michael A. Ward (Michael A. Ward, P.C., on brief), for appellee.


        Appellant, George Cranwell, and appellee, Anne Campbell, were divorced on May 11,

2007.  The divorce decree incorporated the parties' prior letter agreement, which included

provisions regarding child support and spousal support.  Mr. Cranwell subsequently moved to

modify the amount of his child support payments based on a material change of circumstances.

He also sought termination of his spousal support payments.  The trial court granted

Mr. Cranwell's motion to modify child support, but denied his request for termination of spousal

support.  On appeal, Mr. Cranwell assigns the following two errors to the trial court's order:

(1) the trial court erred by finding the evidence insufficient to establish by a preponderance of the

evidence that Ms. Campbell has cohabited in a relationship analogous to marriage for one year,

thus warranting termination of spousal support; and (2) the trial court erred by failing to add a

spousal support payment of $80,000 to Ms. Campbell's gross income and to deduct that $80,000

from Mr. Cranwell's gross income for purposes of calculating child support.  For the following

reasons, we hold that the trial court did not err in finding that Ms. Campbell has not cohabited in a relationship analogous to marriage for one year, but that the trial court did err in failing to include Mr. Cranwell's payment of spousal support in its calculation of the parties' income for purposes of determining child support. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I. BACKGROUND

"On appeal, we view the evidence in the light most favorable to . . . the party prevailing below, 'and grant all reasonable inferences fairly deducible therefrom.'" Johnson v. Johnson, 56 Va. App. 511, 513-14, 694 S.E.2d 797, 799 (2010) (quoting Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999)).

When the trial court divorced the parties, it incorporated their prior letter agreement into its divorce decree, pursuant to Code § 20-109.1. With respect to spousal support and child support, the trial court's order specifically quoted the following provision of the letter agreement:

> 12. Spousal and child support. Beginning January 1, 2007, and continuing on the first of each month thereafter, Mr. Cranwell will pay to [Ms. Campbell], $8,000 per month permanent spousal support and $2,000 per month child support. The spousal support is permanent in nature and non-modifiable by either party and is not subject to modifiability based upon a material change of circumstances. It shall terminate upon the death of either party, the remarriage of [Ms. Campbell] and/or the cohabitation of [Ms. Campbell] in a situation analogous to marriage with a person of the opposite sex for a period of one year or longer. All of this will be added to the fuller Marital Settlement Agreement and court order incorporating same to be prepared hereafter.
> Child support shall be fully modifiable in the future pursuant to current statutory and case law.

Ms. Campbell has been romantically involved with another man for a number of years. Ms. Campbell and her boyfriend typically talk on the phone with each other multiple times each day. Their dating relationship has also involved exclusive sexual intimacy with each other.

- 2 -

They have told Ms. Campbell's three children of their dating relationship, and both Mr. Cranwell and the boyfriend's parents are aware of the relationship as well.

Ms. Campbell lives in Arlington, Virginia, while her boyfriend lives in Los Angeles, California. Ms. Campbell sometimes travels to Los Angeles, and from time to time her boyfriend travels to Washington, D.C. When Ms. Campbell has a layover in Los Angeles pursuant to her employment as a flight attendant, she stays in a hotel, where her boyfriend sometimes visits her and spends the night. Ms. Campbell has also stayed at her boyfriend's house on non-work-related visits. When her boyfriend visits Virginia, he stays either at Ms. Campbell's house or with his parents in Springfield, Virginia.

Neither Ms. Campbell nor her boyfriend has a key to the other's house. Ms. Campbell has a few limited items of personal property at her boyfriend's house, including cosmetics, sweatpants, a coat, and a light jacket. Similarly, her boyfriend has a few items of personal property at her house, including a guitar, an amplifier, some computer speakers, and a small keyboard. Her boyfriend does not keep any clothing at her house.

In 2006, when Mr. Cranwell and Ms. Campbell entered into their agreement regarding spousal and child support, Mr. Cranwell's adjusted gross income was $739,554. In 2007, Mr. Cranwell's total gross income was $155,768. In 2008, Mr. Cranwell's total gross income was $265,265. At the time of the trial court's ruling below, it found that Mr. Cranwell's present income in the fall of 2010 was $6,666 per month. In 2009, Mr. Cranwell did not pay all the spousal support he owed Ms. Campbell. In May 2010, Mr. Cranwell paid Ms. Campbell $80,000 in spousal support for his 2009 arrearages.

In 2009, Mr. Cranwell filed motions requesting the trial court (1) to terminate his spousal support obligation to Ms. Campbell on the grounds that she had cohabited with a person of the opposite sex in a situation analogous to marriage for a period of one year or longer, and (2) to

modify his child support obligation based upon a material change of circumstances. After an evidentiary hearing on September 13, 2010, the trial court denied Mr. Cranwell's request to terminate his spousal support obligation and granted his request to modify his child support obligation.[1] However, the trial court did not include any spousal support in its calculation of the parties' income for purposes of determining child support. This appeal followed.

## II. ANALYSIS

### A. Cohabitation in a Situation Analogous to Marriage

The divorce decree, quoting from the parties' prior letter agreement, states that spousal support "shall terminate upon the death of either party, the remarriage of [Ms. Campbell] and/or the cohabitation of [Ms. Campbell] in a situation analogous to marriage with a person of the opposite sex for a period of one year or longer." Mr. Cranwell contends that the trial court erred in finding the evidence insufficient to establish that Ms. Campbell has cohabited in a relationship analogous to marriage for one year. We disagree.

"[A] trial court's interpretation of [a marital agreement] is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008) (en banc).

In Frey v. Frey, 14 Va. App. 270, 416 S.E.2d 40 (1992), this Court interpreted the words, "cohabitation, analogous to a marriage," contained in a property settlement agreement incorporated by reference into a final divorce decree. This Court held that this phrase "means a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." Id. at 275, 416 S.E.2d at 43. Moreover, as the Supreme Court has stated, "the term 'cohabit' means 'to live together in the same house as married persons live together, or in the manner of husband and

---

[1] Although the trial court issued its rulings from the bench following the hearing, its written order is dated November 22, 2010.

- 4 -

wife.'"  Schweider v. Schweider, 243 Va. 245, 248, 415 S.E.2d 135, 137 (1992) (quoting

Johnson v. Commonwealth, 152 Va. 965, 970, 146 S.E. 289, 291 (1929)); see also Black's Law

Dictionary 296 (9th ed. 2009) (defining "cohabitation" as "[t]he fact or state of living together,

esp[ecially] as partners in life, usu[ally] with the suggestion of sexual relations").

This Court has delineated four factors to utilize when determining whether one party to a

property settlement agreement has proved that the other party has "cohabited":  (1) a "[c]ommon

residence"; (2) "[i]ntimate or romantic involvement"; (3) "[t]he provision of financial support";

and (4) the "[d]uration and continuity of the relationship and other indicia of permanency."

Pellegrin v. Pellegrin, 31 Va. App. 753, 764-66, 525 S.E.2d 611, 616-17 (2000).  "[I]t is within

the province of the trial court to determine what weight to accord each of the factors relevant to

the matter presented."  Id. at 766, 525 S.E.2d at 617.  However, "[t]he requirement that the payee

ex-spouse and that party's paramour be shown to have established and shared a common

residence is firmly established in Virginia case law."  Id. at 764, 525 S.E.2d at 616 (citing

Schweider, 243 Va. at 248-49, 415 S.E.2d at 137; Petachenko v. Petachenko, 232 Va. 296, 299,

350 S.E.2d 600, 602 (1986); Frey, 14 Va. App. at 275, 416 S.E.2d at 43).

Thus, if two individuals do not share a common residence, they are not cohabiting.

Although "proof of a common or shared residence does not itself establish cohabitation," sharing

a common residence is a "requirement" for cohabitation.  Id.  As the Supreme Court has plainly

stated, cohabitation requires "'*liv[ing] together in the same house* as married persons live

together, or in the manner of husband and wife.'"  Schweider, 243 Va. at 248, 415 S.E.2d at 137

(emphasis added) (quoting Johnson, 152 Va. at 970, 146 S.E. at 291).

The statements in Pellegrin that "it is within the province of the trial court to determine

what weight to accord each of the factors relevant to the matter presented," 31 Va. App. at 766,

525 S.E.2d at 617, and that "no one factor is determinative," id., do not negate the requirement of

a common residence. Rather, these statements must be interpreted in light of the Supreme Court's definition of "cohabit" in Schweider, as well as this Court's holding in Frey that "the phrase, 'cohabitation, analogous to a marriage,' means a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." 14 Va. App. at 275, 416 S.E.2d at 43. The latter three factors delineated in Pellegrin are relevant to determining whether a man and woman who are living together have "mutually assum[ed] duties and obligations normally attendant with a marital relationship." Id.; see also Schweider, 243 Va. at 248, 415 S.E.2d at 137 (noting that "'["matrimonial cohabitation"] imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship'" (quoting Petachenko, 232 Va. at 299, 350 S.E.2d at 602)). However, as Pellegrin itself indicates, the first factor is properly viewed as a threshold requirement, which is a necessary though perhaps not a sufficient condition for cohabitation. Pellegrin, 31 Va. App. at 764, 525 S.E.2d at 616 (acknowledging that a common residence is a "requirement" for cohabitation that "is firmly established in Virginia case law," while noting that "proof of a common or shared residence does not itself establish cohabitation").

Under this framework, a court seeking to determine whether a couple is cohabiting in a situation analogous to marriage must ask, first, whether the couple has "established and shared a common residence." Id. If a couple has not established and shared a common residence, then by definition they cannot be "'liv[ing] together in the same house as married persons live together, or in the manner of husband and wife.'" Schweider, 243 Va. at 248, 415 S.E.2d at 137 (quoting Johnson, 152 Va. at 970, 146 S.E. at 291). Thus, if a couple is not sharing a common residence, they are not cohabiting. If the court determines that a couple is sharing a common residence, then it must ask, second, whether evidence pertaining to the other factors listed in Pellegrin demonstrates that the couple is indeed cohabiting in a situation analogous to marriage, i.e.,

- 6 -

"liv[ing] together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." Frey, 14 Va. App. at 275, 416 S.E.2d at 43; see also Schweider, 243 Va. at 248, 415 S.E.2d at 137 ("'"[M]atrimonial cohabitation" consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship.'" (quoting Petachenko, 232 Va. at 299, 350 S.E.2d at 602)).

Here, the trial court found that Ms. Campbell and her boyfriend "do not share a residence. They have two residences." We cannot say that this factual conclusion of the trial court was "plainly wrong or without evidence to support it." Code § 8.01-680. As the trial court explained, Ms. Campbell and her boyfriend

> keep incidental items in each others' [sic] [residence], like guitars and things of that nature, but not such items as they could go back and forth to each others' [sic] residence and live there; no clothes, no toiletries, that kind of thing. Neither has a key to the other's house. They are set up for visits but not for living.[2]

Ms. Campbell resides in Arlington, Virginia, while her boyfriend resides in Los Angeles, California. Ms. Campbell and her boyfriend sometimes stay overnight in each other's house when either of them travels to the vicinity of the other. However, Ms. Campbell oftentimes does not spend the night at her boyfriend's house when she is in California, and her boyfriend does not spend the night exclusively at her house when he is in Virginia. In fact, neither Ms. Campbell nor her boyfriend has a key to the other's house. The fact that each of them keeps a few sundry items of personal property at the other's house does not mean that they share a

---

[2] The trial court also found that Ms. Campbell and her boyfriend do not share their finances as a married couple would and that they do not "share household duties."

residence with each other. In short, although Ms. Campbell and her boyfriend regularly visit each other, they do not share a common residence.[3]

Thus, because Ms. Campbell and her boyfriend do not share a common residence, they are not "cohabit[ing] . . . in a situation analogous to marriage," within the meaning of the parties' letter agreement. They do not "'live together in the same house as married persons live together, or in the manner of husband and wife.'" Schweider, 243 Va. at 248, 415 S.E.2d at 137 (quoting Johnson, 152 Va. at 970, 146 S.E. at 291). Therefore, we hold that the trial court did not err in finding the evidence insufficient to establish that Ms. Campbell has cohabited in a relationship analogous to marriage for one year.

### B. Inclusion of Spousal Support in Child Support Calculation

The trial court awarded child support pursuant to the statutory guidelines.[4] See Code § 20-108.2. However, the trial court did not incorporate into its child support calculation either the fact that Mr. Cranwell remained obligated to pay $8,000 per month in continuing spousal support or the fact that Mr. Cranwell had recently paid Ms. Campbell $80,000 in partial satisfaction of spousal support arrearages. Mr. Cranwell contends that the trial court erred in

---

[3] Of course, it is entirely possible for a couple to share a common residence even though each party continues to own a separate dwelling. Stroud v. Stroud, 49 Va. App. 359, 373-74, 641 S.E.2d 142, 148-49 (2007) (holding that two individuals shared a common residence, notwithstanding the fact that each of them owned a separate house, where one of them spent five nights a week in the other's home for over a year, possessed a key to the other's home, ate her meals in the other's home, washed her clothes and dishes in the other's home, and kept items such as clothes, toiletries, and personal files in the other's home). However, the facts here simply do not demonstrate that Ms. Campbell and her boyfriend share a common residence.

[4] The parties' letter agreement provided that Mr. Cranwell would make monthly payments of $2,000 to Ms. Campbell for child support. As the trial court noted, there is no evidence that this figure was based on the child support guidelines of Code § 20-108.2. Rather, it appears simply to have been based on the original agreement of the parties. The letter agreement further provided that "[c]hild support shall be fully modifiable in the future pursuant to current statutory and case law." Accordingly, when the trial court granted Mr. Cranwell's motion to modify child support based on a material change in circumstances, it based its modified support amount on the statutory guidelines.

failing to add $80,000 to Ms. Campbell's gross income and to deduct $80,000 from Mr. Cranwell's gross income for purposes of calculating child support under the statutory guidelines. We agree.

"'The determination of child support is a matter of discretion for the trial court, and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 703 (1999) (quoting Vissicchio v. Vissicchio, 27 Va. App. 240, 253, 498 S.E.2d 425, 432 (1998)). However, an error of law is by definition an abuse of a trial court's discretion. Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998).

For purposes of calculating child support, Code § 20-108.2(C) prescribes that a party's "'gross income' . . . shall include . . . income from . . . spousal support." Furthermore, it provides that "[f]or purposes of this subsection: (i) spousal support received shall be included in gross income and spousal support paid shall be deducted from gross income when paid pursuant to an order or written agreement." Code § 20-108.2(C). As this Court has explained, "in determining child support under Code § 20-108.2(C), the trial court must include spousal support in the gross income of the receiving spouse and must deduct the amount of spousal support from the gross income of the paying spouse." Frazer v. Frazer, 23 Va. App. 358, 381, 477 S.E.2d 290, 301 (1996).

Here, although Mr. Cranwell was under a continuing obligation to pay $8,000 per month in spousal support, the trial court did not consider this obligation in its calculation of the parties' income. Furthermore, the trial court expressly declined to include Mr. Cranwell's recent payment of $80,000 in spousal support in its calculation of the parties' income. The trial court reasoned that Mr. Cranwell's payment of spousal support was irregular, untimely, and unreliable.

We conclude that the trial court erred by failing to consider Mr. Cranwell's payment of spousal support in determining the proper amount of child support under the statutory guidelines.

The statute requires a trial court to include spousal support in its calculation of the parties' gross income. Code § 20-108.2(C). The fact that certain sources of income may be irregular or not expected to continue in the future is irrelevant to a present calculation of the parties' income. "Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur." Keyser v. Keyser, 2 Va. App. 459, 461, 345 S.E.2d 12, 13 (1986); see Goldhamer v. Cohen, 31 Va. App. 728, 737, 525 S.E.2d 599, 603 (2000) (holding that where the trial court declined to include as income an inheritance received by one of the parties on the grounds that such income would not extend into the future, this reasoning was "contrary to the express language of [Code § 20-108.2(C)]," since that code section "clearly includes irregular income in the gross income computation"); Howe v. Howe, 30 Va. App. 207, 216, 516 S.E.2d 240, 245 (1999) (holding that where father's recent income included a substantial one-time gift that was not part of father's regular income, the trial court "correctly included the gift proceeds in father's gross income," and "[f]ather [could] seek a modification in child support payments for the next year, if and when his income no longer include[d] such gift proceeds").

Although the irregularity of a certain source of income for a party is irrelevant to a determination of the parties' income under Code § 20-108.2(C), such irregularity becomes relevant if the trial court subsequently considers whether to deviate from the amount of child support dictated by the statutory guidelines. "Once the presumptive amount of child support [is] calculated, the trial judge [can make] a 'downward deviation' from the presumptive amount of child support, to the extent that Code § 20-108.1 factors indicate that the award would be 'unjust or inappropriate.'" Howe, 30 Va. App. at 216, 516 S.E.2d at 245. One of the factors a trial court

may consider in deciding whether to deviate is the regularity of a particular source of income. Goldhamer, 31 Va. App. at 737-38, 525 S.E.2d at 603-04.

Counsel for Ms. Campbell suggested at oral argument that the trial court deviated from the guideline amount of child support as permitted by Code § 20-108.1(B). However, the trial court here failed to follow the requirements of Code § 20-108.1(B) for deviating from the guideline amount. That section requires, among other things, that the trial court "state the amount of support that would have been required under the guidelines" if it chooses to deviate from the guideline amount. Code § 20-108.1(B). Since the trial court failed to comply with this requirement of the statute, its decision cannot be upheld as a valid deviation from the guideline amount.

Thus, we hold that the trial court erred in ignoring Mr. Cranwell's payment of spousal support[5] when it calculated the parties' income for purposes of determining child support.

### III. CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.

---

[5] Mr. Cranwell has not assigned error to the fact that the trial court did not include the future ordered spousal support payments of $8,000 per month in its calculation of the parties' income. Accordingly, we do not address this issue. Mr. Cranwell has assigned error to the trial court's failure to include his $80,000 spousal support payment in its calculation of the parties' income. On the facts of this case, we agree that this was error.