COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Petty and Senior Judge Haley
Argued at Alexandria, Virginia


DAVID H. KELLOGG

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0025-13-4                      JUDGE ROBERT P. FRANK
                                                    NOVEMBER 26, 2013

DENISE ANNE KELLOGG


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

Jennifer A. Mullett (Augusta L. Meacham; Mullett Dove Meacham
& Bradley, PLLC, on briefs), for appellant.

Karen C. Davis (Law Offices of Karen C. Davis, on brief), for
appellee.


BACKGROUND

David Kellogg, appellant/husband, contends the trial court erred in failing to terminate

his obligation to pay spousal support to Denise Kellogg, wife, pursuant to the parties' property

settlement agreement (PSA), finding that wife and Eric Baker (Baker) did not cohabitate in a

relationship analogous to marriage.

The parties entered into a PSA, dated November 10, 2005 wherein husband agreed to pay

wife $6,000 per month spousal support and continuing "thereafter until July 1, 2017, the death of

either party, the wife's remarriage, or the wife's cohabitation with a person of the opposite sex in

a relationship analogous to marriage for a period of six months or more, whichever shall first

occur." This agreement was affirmed, ratified, and incorporated into the final decree of divorce

entered on December 21, 2005.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Husband filed a petition to terminate spousal support on October 14, 2011, alleging wife cohabited with Baker in a relationship analogous to marriage. Wife filed an answer, denying cohabitating in such a relationship but admitted wife and Baker have "an ongoing personal and sexual relationship."

"On appeal, we construe the evidence in the light most favorable to wife, the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom." Wright v. Wright, 38 Va. App. 394, 398-99, 564 S.E.2d 702, 704 (2002) (citing Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995)).

The majority of the facts are uncontroverted. Wife and Baker entered into a serious romantic and sexual relationship in January of 2010. They are in love, and their relationship is monogamous and continuous. They hold themselves out to family and friends as being in an exclusive and committed relationship.

Baker owns a condo on South Glebe Road. Wife owns a residence on North Nelson Street, where she lives with her three children. Each property is titled solely in the parties' respective names.

They travel together at least three times per year, sharing travel expenses. The couple has no joint checking or savings account nor any joint investments. Neither is a beneficiary of the other's insurance policies. Neither receives mail at the other's residence.

While the number of nights the couple spends together is controverted, no evidence suggests that they live together every day. Baker testified that there are some weekends where he and wife are both in town but wife does not come to the condo. Typically, when husband has visitation with the children, wife stays with Baker at his condo from Friday until Tuesday morning. This occurs twice per month. In addition to the ten days per month when husband has visitation, Baker spends one night per week with wife when the children are home, for a total of

twelve nights per month. Baker does not have a key to wife's residence. Wife has a key to Baker's condo and a personal parking space there. She has unfettered access to the condo and gains entrée to the condo elevator with an access key. She testified she generally spends two to five nights a week with Baker at his condo, unless travel, work, or other engagements interfere with that schedule.

Wife and Baker regularly keep each other informed as to their activities by phone and e-mail. Wife keeps certain toiletries at Baker's condo but keeps no clothing there. When she stays at the condo, she brings the necessary clothing with her. Baker keeps nothing at wife's house other than a toothbrush.

When together, wife and Baker prepare meals together and clean up afterwards.

During their relationship, wife has bought groceries for Baker from time to time. From March 2010, she has purchased groceries for Baker approximately thirty-two times. When wife stays at the condo, she brings her dog with her. They share the responsibility of feeding and walking the dog.

Wife and Baker have occasionally entertained friends together at the condo. They share some vacations, exchange gifts, share holidays, attend extended family gatherings, attend work-related social activities, and discuss job issues. On several occasions, wife and Baker have attended recreational events with wife's children.

A private investigator, hired by husband, had the condo under surveillance for a six-month period from March 28-September 28, with thirty-three days of surveillance. He observed thirteen overnights at the condo and three overnights at wife's residence.

In denying husband's motion, the trial court made a number of factual findings: There is no common residence, that there is a fair amount of cohabitation, there is an intimate, ongoing romantic involvement, that wife has a key to Baker's condo and her own parking space there, but

she does not keep clothing at the condo, that Baker keeps no clothes at wife's residence, and that wife and Baker have separate finances. The court also considered that Baker attended the memorial service for wife's mother but not the private service.

Acknowledging this is "a very close call," the trial court found husband did not meet his burden of proof, that wife did not live with Baker in a relationship analogous to marriage.

This appeal follows.

ANALYSIS

Appellant contends that the trial court erred in finding he did not prove wife and Baker lived in a relationship analogous to marriage. He contends wife and Baker shared a common residence despite the fact they each owned a separate residence.

Our analysis is not an interpretation of the property settlement agreement but application of the facts to the appropriate case law. Here, the facts are generally not controverted.

As we noted above, the evidence in this case is essentially undisputed. In that posture:

> The findings of a trial court after an *ore tenus* hearing should not be disturbed on appeal unless they are plainly wrong or without evidence to support them. A trial court's conclusion based on undisputed evidence, however, does not have the same binding weight on appeal. Moreover, a fact finder may not arbitrarily disregard uncontradicted evidence that is not inherently incredible.

Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992) (citations omitted).

"Thus, when '[n]o controverted fact was passed on by the trial court,' Rinehart & Dennis Co. v. McArthur, 123 Va. 556, 567, 96 S.E. 829, 833 (1918), the trial court's 'finding is not entitled to the same weight it would be accorded if reached in a factual situation upon conflicting evidence.' Madbeth, Inc. v. Weade, 204 Va. 199, 202, 129 S.E.2d 667, 669 (1963)." Stroud v. Stroud, 49 Va. App. 359, 372, 641 S.E.2d 142, 148 (2007).

The Supreme Court of Virginia, in Schweider, 243 Va. at 248, 415 S.E.2d at 137, stated:

> We have said that the term "cohabit" means "to live together in the same house as married persons live together, or in the manner of husband and wife." Johnson v. Commonwealth, 152 Va. 965, 970, 146 S.E. 289, 291 (1929). While engaging in sexual relations is a factor in determining cohabitation, "'matrimonial cohabitation' consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship." Petachenko v. Petachenko, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986); see Colley v. Colley, 204 Va. 225, 228-29, 129 S.E.2d 630, 632 (1963).

In Frey v. Frey, 14 Va. App. 270, 416 S.E.2d 40 (1992), this Court interpreted the words, "cohabitation, analogous to a marriage." We held that this phrase "means a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." Id. at 275, 416 S.E.2d at 43.

In Pellegrin v. Pellegrin, 31 Va. App. 753, 764-65, 525 S.E.2d 611, 616-17 (2000), we established four non-exclusive areas of consideration: 1) common residence; 2) intimate or romantic involvement; 3) provisions of financial support; and 4) duration and continuity of the relationship and other indicia of permanency.

> "[I]t is within the province of the trial court to determine what weight to accord each of the factors relevant to the matter presented." Id. at 766, 525 S.E.2d at 617. However, "[t]he requirement that the payee ex-spouse and that party's paramour be shown to have established and shared a common residence is firmly established in Virginia case law." Id. at 764, 525 S.E.2d at 616 (citing Schweider, 243 Va. at 248-49, 415 S.E.2d at 137).
>
> Thus, if two individuals do not share a common residence, they are not cohabiting. Although "proof of a common or shared residence does not itself establish cohabitation," sharing a common residence is a "requirement" for cohabitation. Id. As the Supreme Court has plainly stated, cohabitation requires "'*liv[ing] together in the same house* as married persons live together, or in the manner of husband and wife.'" Schweider, 243 Va. at 248, 415 S.E.2d at 137 (emphasis added) (quoting Johnson, 152 Va. at 970, 146 S.E. at 291).

- 5 -

Cranwell v. Cranwell, 59 Va. App. 155, 162, 717 S.E.2d 797, 800 (2011) (other citations omitted).

As Pellegrin indicates, the first factor is properly viewed as a threshold requirement, which is a necessary though perhaps not a sufficient condition for cohabitation. Pellegrin, 31 Va. App. at 764, 525 S.E.2d at 616 (acknowledging that a common residence is a "requirement" for cohabitation that "is firmly established in Virginia case law," but noting that "proof of a common or shared residence does not itself establish cohabitation").

> Under this framework, a court seeking to determine whether a couple is cohabiting in a situation analogous to marriage must ask, first, whether the couple has "established and shared a common residence." Id. If a couple has not established and shared a common residence, then by definition they cannot be "'liv[ing] together in the same house as married persons live together, or in the manner of husband and wife.'" Schweider, 243 Va. at 248, 415 S.E.2d at 137 (quoting Johnson, 152 Va. at 970, 146 S.E. at 291). Thus, if a couple is not sharing a common residence, they are not cohabiting.

Cranwell, 59 Va. App. at 163, 717 S.E.2d at 801.

Thus, our initial inquiry is whether husband proved wife and Baker established and shared a common residence. If they did not, our inquiry ends.

A couple may own separate homes and still be found to share a common residence. See id. at 164 n.3, 717 S.E.2d at 801 n.3 ("Of course, it is entirely possible for a couple to share a common residence even though each party continues to own a separate dwelling.").

Further, it is clear that the couple need not live together on a full-time basis. See Stroud, 49 Va. App. at 374, 641 S.E.2d at 149, where we held that the former wife and her female companion were cohabiting in a relationship analogous to marriage where they maintained separate homes but spent an average of five nights a week together, and Penrod v. Penrod, 29 Va. App. 96, 510 S.E.2d 244 (1999), where the former wife was found to be cohabiting in a

relationship analogous to marriage when she stayed with her paramour overnight three to four nights a week.

Clearly, wife and Baker had an ongoing romantic and sexual relationship. Wife has free access to Baker's condo and has her own parking space and key. Baker spends one night per week at wife's residence. Twice a month, wife spends weekends with Baker at his condo when husband has visitation with the children. However, the children do not spend nights at the condo. Baker also testified there are some weekends he and wife do not stay together even though they are both in town.

From the above, the evidence reveals that wife spends a five-day weekend with Baker in his condo (Friday through Tuesday) twice per month, and Baker spends two nights per month at wife's residence when the children are home, for a total of twelve days per month. These numbers comport with the private investigator's surveillance.

Neither party keeps clothing at the other's residence, except for basic toiletries. Each party brings a suitcase to transport clothing. Neither receives mail at the other's residence.

What is particularly significant is that wife's children do not stay overnight at the condo. The children, who at the time of trial were eighteen, sixteen, and thirteen years old, reside exclusively at wife's residence. It is inconceivable, under the facts of this case, that wife and Baker would establish and share a common residence excluding wife's children.

Appellant cites Stroud to support his contention that two people can own two separate residences and still share a common residence. However, the facts of that case are not applicable here. In Stroud, the former wife (Debra) and her companion, Robyn, did not own a home together. Robyn owned a separate residence, which she rented to a tenant. 49 Va. App. at 370, 641 S.E.2d at 147. The tenant had complete use of the entire house except for Robyn's bedroom and bathroom. Id. Debra and Robyn did not share any financial resources, and neither was

beneficiary of the other's retirement accounts or life insurance.  Id. at 371, 641 S.E.2d at 147-48.

Robyn stayed overnight in Debra's house an average of five nights per week, had a sexual

relationship with her, and kept her clothes in Debra's bedroom and toiletries in Debra's

bathroom.  Id. at 369, 641 S.E.2d at 147.  Debra and Robyn exchanged rings which they

"routinely" wore, and they vacationed together.  Id. at 370, 641 S.E.2d at 147.  Robyn washed

dishes and did laundry at Debra's residence, possessed a key to Debra's house, drove Debra's

car, and attended church with her.  Id. at 369, 641 S.E.2d at 147.  Debra had lent Robyn

$8,000-$9,000 without any written documentation or payment schedule.  Id.  Further, Robyn was

listed as the emergency contact for Debra and her three children, and Robyn told the children she

loves them.  Id.

Robyn stated she and Debra have the joy of raising Debra's children, characterizing

herself as a "co-parent" and saying that the children are like her own.  Robyn described her

relationship with Debra as an exclusive sexual relationship, they are a "couple," and they have an

understanding of fidelity.  Id. at 375, 641 S.E.2d at 149.

A private investigator had Debra's house under surveillance for thirty-four days.  Robyn

stayed there all but four days.  Id. at 371, 641 S.E.2d at 148.  The investigator testified Robyn

"didn't spend any appreciable time at her own house."  Id.  Robyn testified the four-day absence

was due to a business trip.  She had left from Debra's house and returned there when her trip

concluded.  Id.

In Stroud, we reviewed the four non-exclusive factors demonstrative of the "mutual

responsibilities of the marital relationship," explained in Pellegrin:  common residence, intimate

or romantic involvement, provision of financial support, and duration and continuity of the

relationship.  Id. at 373-75, 641 S.E.2d at 148-50.

We found no significance to Debra and Robyn owning two separate properties – to the extent Robyn even went to her own property, those visits were "immaterial to the issue at hand." Id. at 373, 641 S.E.2d at 149. We held the facts proved Robyn and Debra cohabited in a situation analogous to marriage, emphasizing *inter alia* Robyn's jointly raising Debra's children, that Robyn and Debra lived together in a "durable, continuing and permanent relationship," that they each routinely wore diamond rings given by the other, and that Robyn kept her clothes at Debra's house. Id. at 375, 641 S.E.2d at 149-50.

In Pellegrin, however, we found the evidence insufficient to prove cohabitation. We found that the evidence established:

> that wife has been romantically involved in an exclusive relationship with her paramour since 1989, that their relationship has been marked by sexual intimacy since 1990, that they have attended family functions together, that they have vacationed together, and that they have made frequent visits to each other's homes. Wife's paramour has established a close and familial relationship with the parties' daughters. However, the evidence failed to prove that wife shared a common residence with him or that they mutually assumed the duties and obligations normally associated with a marriage. Although wife's companion undertook some of the household chores while in her home, scant evidence proved that he financially contributed to or supported her household in any significant way. Evidence that he loaned money to wife and her children and that he and wife regularly exchanged gifts is insufficient to establish the degree of financial interdependence generally associated with marital relationships.

Pellegrin, 31 Va. App. at 767, 525 S.E.2d at 617-18.

We concluded that based on the appropriate standard of review, the record did not show "that the trial court improperly weighed the factors or that the evidence established cohabitation as a matter of law." Id. (citing Koneful v. Koneful, 18 Va. App. 612, 614, 446 S.E.2d 153, 154 (1994)).

This case is easily distinguishable from Stroud. Here, there is no question that wife at least partially resided at her home with her children. Moreover, the trial court found that wife

- 9 -

and Baker did not share a common residence. We cannot say that this factual finding was "'plainly wrong or without evidence to support it.'" Cranwell, 59 Va. App. at 164, 717 S.E.2d at 801 (quoting Code § 8.01-680).

Furthermore, like the parties in Pellegrin, wife and Baker do not assume the duties normally associated with marriage. They do not keep clothing or receive mail at the other's residence. They keep their finances separate and split the costs when they travel together.

In a cohabitation context, "a relationship 'analogous to marriage' does not mean a 'marriage.' Rather, 'analogous' is defined as 'similar in some way.'" Stroud, 49 Va. App. at 378, 641 S.E.2d at 151 (quoting Webster's Dictionary 17 (Michael Agnes ed., Wiley Publishing, Inc. 2002)). "The word similar 'is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing but is not identical in form and substance.'" Frederick Fire & Rescue v. Dodson, 20 Va. App. 440, 446, 457 S.E.2d 783, 786 (1995) (quoting Black's Law Dictionary 1383 (6th ed. 1990)).

Furthermore, "[a] finding of 'cohabitation' must be based upon evidence concerning the overall nature of the relationship, not merely a piecemeal consideration of individual factors such as its sexual or financial components." Penrod, 29 Va. App. at 101, 510 S.E.2d at 246.

We conclude that there was sufficient evidence to support the trial court's finding that wife and Baker did not cohabit in a relationship analogous to marriage. They did not live together in the same house as married persons live together, and they did not assume duties and obligations normally attendant with a marital relationship. See Frey, 14 Va. App. at 275, 416 S.E.2d at 43 (holding that the language "cohabitation, analogous to marriage" "has been consistently interpreted by courts as encompassing both a permanency or continuity element and

an assumption of marital duties"). Thus, there was no error in the trial court's failure to terminate husband's spousal support obligation.

CONCLUSION

Because wife and Baker were not living in a relationship analogous to marriage, the trial court did not err in failing to terminate husband's obligation to pay spousal support. As such, we affirm the ruling of the trial court.

<u>Affirmed.</u>