COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia

**UNPUBLISHED**

DOUGLAS WOLOSHIN

v.        Record No. 1147-19-4

LILLIAN WOLOSHIN

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
MARCH 31, 2020

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

John K. Cottrell (Cottrell Fletcher & Cottrell PC, on briefs), for
appellant.

Rebecca R. Masri (Masri Family Law, on brief), for appellee.

This appeal is about the interpretation of the parties' marital settlement agreement, which

was ratified and incorporated into the parties' final decree of divorce.

## I. BACKGROUND[1]

Douglas Woloshin ("Husband") and Lillian Woloshin ("Wife") were married in November

1977 and separated in February 2006.  The parties entered into a marital settlement agreement

("settlement agreement") on July 30, 2010, which was ratified and incorporated (but not merged)

into the trial court's August 23, 2010 final order of divorce.  On March 20, 2019, Wife filed a

motion to enforce final decree of divorce, alleging that Husband was in violation of paragraph

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The record in this case was sealed.  In order to appropriately address the assignments of
error raised by appellant, this opinion includes some portions of the record that were sealed.
Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we
unseal only those specific facts, finding them relevant to the decision in this case.  The remainder
of the previously sealed record remains sealed."  Levick v. MacDougall, 294 Va. 283, 288 n.1
(2017).

15(D) of the settlement agreement by failing to pay her monthly share of his ten-year retirement benefit plan payments. In his response to Wife's motion, Husband alleged that the parties had a separate oral contract "that the parties would equally share the rental expenses of the parties' daughter . . . while she attended college" and that Wife's "half of this rent would be advanced by [Husband] who would be repaid by offset from [Wife's] share of the [retirement benefit] Plan." Husband stated he had a "separate lawsuit for breach of contract against" Wife regarding this matter.

At the motion hearing, Wife presented evidence that she had not received any payments from Husband for her share of his retirement benefit plan. The uncontradicted evidence was that although the language of the settlement agreement contemplated that Husband's retirement would occur on "the last day of the fiscal year of the firm in which Husband reaches age 66" – i.e., December 31, 2014 – Husband continued to work for his law firm as an "active retired partner" until January 1, 2018. The settlement agreement provides that "Wife shall be entitled to one-half of the marital share of th[e retirement benefit] payments." Wife argued that the language of the settlement agreement required that Wife be paid based on "the actual benefit that he receives," not what Husband would have received if he had retired on December 31, 2014. Husband argued that the terms of the settlement agreement limit the marital share to only that portion of the retirement benefit payments that accrued as of the date he was originally expected to retire – not the retirement benefit payments he actually received by working three more years.

The parties also presented arguments at the hearing regarding the manner in which the retirement benefit plan payments would be apportioned for tax purposes under the terms of the settlement agreement. Both parties agreed that Husband's firm would not pay Wife directly. Wife argued that Husband, however, could apportion her share of the retirement benefit plan payments to her through a form 1099-MISC, so that each party would have his or her separate income and "that

- 2 -

[Wife] can then pay taxes on her proportionate share." She presented expert testimony by a certified public accountant that this was an appropriate method (and compliant with 26 U.S.C. § 6041) for both parties to account for the income. Husband, a former tax attorney and certified public accountant, also testified as an expert. Husband opined that the method suggested by Wife "can be labeled as . . . taxable income shifting" and that if he used the method suggested by Wife, he "would be subject to double taxation and all the penalties associated with the same." He argued that, per the settlement agreement, as Wife's income from the retirement payments could not be apportioned to her in gross, he should pay her net of tax.

The circuit court entered an order to enforce final decree of divorce and for award of attorney fees. The circuit court held that the settlement agreement provides for the marital share of the retirement benefit payments to be calculated by including all the years that Husband worked as an active partner (including the three additional years as an active retired partner), not just the benefits he earned until the year he turned sixty-six. Concerning the tax treatment of the retirement benefit payments, the circuit court ordered Husband to "pay [Wife] the gross amount of her share of the Unfunded Retirement Benefit Plan payment and [Wife] shall be solely responsible for the income taxes on her share of the Unfunded Retirement Benefit Plan." The circuit court also ordered Husband to pay Wife's attorney's fees at trial.

On appeal, Husband makes three assignments of error. First, he argues that the "Trial Court erred in its construction of paragraph 15(D) of the parties' Marital Settlement Agreement regarding the calculation of the percentage or fractional interest to which the Appellee was entitled from the Appellant's Unfunded Retirement Plan." Second, he argues the "Trial Court erred in requiring the Appellant to pay the Appellee her share of his Unfunded Retirement Plan benefit in gross, rather than 'net of tax' per paragraph 15(D)(vi) of the parties' settlement agreement." Third, Husband argues the trial court erred in ordering him to pay Wife's attorney's fees at trial.

II. ANALYSIS

Appellant's first two assignments of error require interpretation of the parties' settlement agreement. "[A] trial court's interpretation of [a marital agreement] is an issue of law that we review *de novo*." Cranwell v. Cranwell, 59 Va. App. 155, 161 (2011) (alterations in original) (quoting Stacy v. Stacy, 53 Va. App. 38, 43 (2008) (*en banc*)).

A. Portion of Retirement Benefit Plan Payments Due to Wife Per Settlement Agreement

The relevant portion of paragraph 15(D) of the settlement agreement, which is at issue in this appeal, states:

> D. The Husband has an interest in an Unfunded Retirement Benefit Plan ("Plan") as a result of his employment with Duane Morris LLP which is a nonqualified retirement plan which the parties agree is partly marital property and partly Husband's separate property. Husband's Entitlement to the Plan is pursuant to Section 17 of the Duane Morris LLP Partnership Agreement.
>> i. Husband is a partner in the law firm of Duane Morris, LLP (the firm) and a party to the firm's partnership agreement (the partnership agreement).
>> ii. Pursuant to section 17 of that agreement, Husband is entitled to certain payments commencing on his retirement date and continuing for a specified period of time (such payments referred to in the partnership agreement and in this agreement as pension payments).
>> iii. The parties agree that Wife shall be entitled to one-half of the marital share of those payments, payable to Wife on an "if, as, and when" basis.
>> iv. The marital share of such payments shall be determined as a fraction, the numerator of which is the number of months commencing with the date that Husband first became a partner in the firm and ending on February 28, 2006, and the denominator of which is the number of months commencing with the date that Husband first became a partner in the firm and ending on his retirement date.
>>> 1. The date on which the Husband first became a partner in the firm is July 23, 2001.
>>> 2. The retirement date is the last day of the fiscal year of the firm in which Husband reaches age 66.

Husband argues that the trial court "erred in its construction of paragraph 15(D) of the parties' Marital Settlement Agreement regarding the calculation of the percentage or fractional interest to which the Appellee was entitled from the Appellant's Unfunded Retirement Plan." Paragraph 15(D)(iv) clearly defines the fraction of the total retirement benefit payments which is to be considered marital. The numerator is "the number of months commencing with the date that Husband first became a partner in the firm," which is defined in paragraph 15(D)(iv)(1) as July 23, 2001, "and ending on February 28, 2006." Thus, the numerator is fifty-five. The denominator is "the number of months commencing with the date that Husband first became a partner in the firm," which is defined in paragraph 15(D)(iv)(1) as July 23, 2001, "and ending on his retirement date," which is defined in paragraph 15(D)(iv)(2) as "the last day of the fiscal year of the firm in which Husband reaches age 66" (which both parties agree is December 31, 2014). Thus, the denominator is 161. That fraction equals 34.16%. The parties agreed at the hearing before the trial court that the fraction described in paragraph 15(D) of the settlement agreement is 34.16%.

While Husband's counsel claimed at oral argument before this Court that he did not stipulate before the circuit court that the percentage is 34.16%, Wife's counsel noted that the agreed percentage of 34.16% was brought up at least twice before the circuit court without objection. First, Wife's counsel noted to the circuit court that both parties agreed that the marital share fraction was 34.16%. Second, the circuit court judge stated, "[Y]ou all agree on what the marital share is." Husband's counsel did not object at either instance. In fact, even in his brief filed on appeal in this Court, Husband states, "The marital percentage calculation under this formula, which would be 55 months over 161 months, would be 34.16%."

Therefore, the percentage is not at issue. What *is* at issue is whether the language of the settlement agreement provides that the marital share includes part of the retirement benefit payments increased by the three years that Husband worked for his firm beyond the retirement date

defined in the settlement agreement – "the last day of the fiscal year of the firm in which Husband reaches age 66," i.e., December 31, 2014 – or whether the marital share is limited to what Husband would have received on that date regardless of when Husband actually retired.

In the absence of a settlement agreement, the norm would be for benefits earned by Husband after the date of separation to be Husband's separate property. See Code § 20-107.3(A)(2); Wilson v. Wilson, 18 Va. App. 193, 198 (1994) ("Under Code § 20-107.3, pension benefits accrued *after* the parties are divorced are not marital property."). However, the parties created their own contractual requirements and responsibilities under the settlement agreement they signed, and so the settlement agreement governs this case. The settlement agreement provides no contingency for what would occur if Husband did not actually retire on the date provided in paragraph 15(D)(iv)(2). The settlement agreement does provide, however, that "Wife shall be entitled to one-half of the marital share of those payments, payable to Wife on an 'if, as, and when' basis." Paragraph 15(D)(iii). The plain and reasonable reading of this provision is that Wife is to receive her portion *if* Husband receives payment, *as* he receives payment, and *when* he receives payment. Husband did not begin receiving this retirement benefit payment until he became an inactive retired partner on January 1, 2018, but the agreement does not have language that creates an exception for how Wife's portion should be calculated in the eventuality that Husband worked longer as a partner at his law firm than the settlement agreement anticipated and delineated. The fraction remains the same for dividing the proverbial pie (i.e., the total benefit payments), even though the total number of years Husband worked as a partner increased, thus increasing the ultimate

size of the pie (i.e., the total amount of retirement benefits paid over the ten years that Husband receives them under the law firm's partnership agreement).[2]

Furthermore, calculating what Husband's benefits would be if he had retired at the end of 2014 instead of at the end of 2017 would require looking to evidence not in the record, including the partnership agreement of Husband's law firm and Husband's yearly income for the ten years prior to his retirement (since Husband testified that the retirement benefit payments depended upon "the highest five of ten years prior to the partner's retirement"). "[A]n appellate court's review of the case is limited to the record on appeal." Wilkins v. Commonwealth, 64 Va. App. 711, 717 (2015) (alteration in original) (quoting Turner v. Commonwealth, 2 Va. App. 96, 99 (1986)). Husband notes that the partnership agreement provides details on how the size of the pie – i.e. the total retirement benefit payments – is measured. Husband attempted to enter a portion of the partnership agreement into evidence, but the circuit court would not allow it to be admitted based on the circuit court's ruling that Husband did not adequately authenticate the document. Husband originally included in his designation of contents of appendix and assignments of error with this Court an assignment of error challenging the circuit court's decision to exclude the law firm's partnership agreement from the evidence, but Husband subsequently withdrew that assignment of error. Therefore, this Court is clearly limited in what it can consider. To attempt to make determinations about what *would* be the case *if* Husband had retired as contemplated by the settlement agreement would require consideration of evidence outside of the record in order to make those calculations.

---

[2] The record also shows that, per the terms of the settlement agreement, spousal support ended on February 28, 2014, which is the year the retirement benefit payments at issue were planned to commence. Wife notes that when spousal support ended, instead of receiving her portion of the retirement benefit payments, as per the settlement agreement, she received neither.

In short, the fraction of the total retirement benefit payments that makes up the marital share is clearly defined by the settlement agreement. Indeed, both parties agree that the fraction equals 34.16%. Since the settlement agreement does not make provision for the eventuality that Husband would not actually retire on the defined retirement date, that fraction is applied against the retirement benefit payments Husband actually receives – if, as, and when he receives them. Therefore, we hold that the circuit court did not err in interpreting the settlement agreement to include the extra three years of Husband's employment as a partner in his firm in making the calculation of retirement benefit payments owed to Wife.

### B. Whether Wife Receives Payments in Gross or "Net of Tax"

Paragraph 15(D) of the settlement agreement, quoted *supra*, also states:

> v. Husband shall be responsible for making appropriate and effective arrangements so that Wife shall receive promptly when due each required payment.
>> 1. If possible, Husband shall make arrangements with the firm for the Wife's share of the pension payments to be paid directly by the firm to the Wife.
>> 2. If the firm will not make pension payments directly to Wife, Husband shall make a payment to Wife . . . in the required amount on the same day that the firm's pension payment is due to Husband.
>> vi. It is the intention of the parties that the treatment of the pension payments for tax purposes of the parties shall be that, to the extent that the pension payments are taxable, the amount of taxable income associated with the pension payments shall be apportioned between Husband and Wife in proportion to the amount of the pension payments received by each, and that Husband and Wife shall cooperate and take necessary and appropriate actions to report the proper amounts of income related to the pension payments in each of their respective tax returns. Provided, however, that in the event the Husband is required by relevant IRS regulation to claim 100% of said benefits on his Federal and State income tax returns, and said benefits cannot be apportioned between the Husband and the Wife for tax purposes, the Husband shall pay to the Wife her share of said benefits "net of tax", the Wife's net share to be calculated using the Husband's effective income tax rate. In this event, the Wife shall have

> no obligation to claim said benefits on any Federal or state income tax return filed by her. In the event the parties are unable to agree as to the net amount to be paid to the Wife, the parties shall jointly consult with a mutually agreed upon neutral tax professional at their joint and equal expense to determine the appropriate amount to be paid to the Wife.

The circuit court, relying on the fact that it had not heard testimony that Husband is *required* to pay taxes on the gross income to him before paying Wife's share to her, ordered Husband to pay Wife "the gross amount of her share of the Unfunded Retirement Benefit Plan payment and [Wife] shall be solely responsible for the income taxes on her share of the Unfunded Retirement Benefit Plan."

The settlement agreement creates a preference that "pension payments shall be apportioned between Husband and Wife in proportion to the amount of the pension payments received by each, and that Husband and Wife shall cooperate and take necessary and appropriate actions to report the proper amounts of income related to the pension payments in each of their respective tax returns." Alternatively, however, the settlement agreement provides that, in the event that "said benefits cannot be apportioned between the Husband and the Wife for tax purposes, the Husband shall pay to the Wife her share of said benefits 'net of tax', the Wife's net share to be calculated using the Husband's effective income tax rate."

Neither party disputes the fact presented to the circuit court that Husband's firm will not make payments directly to Wife. Since the law firm will not pay and apportion the retirement benefit payments directly to Wife, the preference established in the settlement agreement – i.e., direct apportionment between Husband and Wife before taxes – is foreclosed. This outcome is not changed by Wife's proposal of Husband using an IRS Form 1099-MISC to shift income to Wife. As Husband correctly noted before the circuit court, 26 U.S.C. § 6041 – relied upon by Wife's expert – applies to "persons engaged in a trade or business and making payment in the course of such trade or business to another person." 26 U.S.C. § 6041. Furthermore, as Husband also noted

before the circuit court, the IRS instructions on Form 1099-MISC state, "Report on Form 1099-MISC only when payments are made in the course of your trade or business. Personal payments are not reportable." See Instructions for Form 1099-MISC. The payments from Husband to Wife are part of a divorce settlement – not made in the course of a trade or business. Wife's expert also opined that Husband would use Box 3, titled "Prizes and awards," to report the payments to Wife. However, the instructions for Form 1099-MISC for Box 3 provide examples such as winning merchandise on game shows or sweepstakes, which do not comport with and are not similar to payments from a retirement benefit. Wife (who was not an employee of Husband's law firm) does not have a claim to the retirement benefit payments at issue in this case through the course of engaging in a trade or business; her claim is derived from her marriage to Husband and the marital settlement agreement between the two parties.

Because the preferred method as set forth by the settlement agreement – direct apportionment between Husband and Wife before taxes – is not possible (and would still leave Husband open to liability for full taxation on the total benefit payments paid directly to him by his firm and possible additional penalties by the IRS),[3] the alternative set forth by the settlement agreement applies. The settlement agreement states:

> Provided, however, that in the event the Husband is required by relevant IRS regulation to claim 100% of said benefits on his Federal and State income tax returns, and said benefits cannot be apportioned between the Husband and the Wife for tax purposes, the Husband shall pay to the Wife her share of said benefits "net of tax", the Wife's net share to be calculated using the Husband's effective income tax rate.

Therefore, we hold that the circuit court erred in its interpretation of the settlement agreement regarding the apportionment, taxation, and payment of the retirement benefit payments

---

[3] Husband introduced into evidence the Schedule K-1 provided by his law firm to him and to the Internal Revenue Service attributing all of the income from the retirement benefit payments to Husband only.

- 10 -

and in ordering Husband to pay Wife "the gross amount of her share" without reducing it by the taxes owed on that payment by the recipient – Husband. We, therefore, reverse the circuit court on this assignment of error. Upon remand, the circuit court shall direct Husband to pay Wife her benefits "net of tax" as directed by the settlement agreement.[4]

## C. Attorney's Fees

Because we hold that the circuit court erred in its interpretation of the settlement agreement, we remand Husband's final assignment of error, the question of whether attorney's fees were properly awarded at trial, to the circuit court for reconsideration in light of our holding on appeal.

Wife also requests that Husband pay her attorney's fees and costs incurred in this appeal, as she claims is permitted by paragraph 38 of the settlement agreement and O'Loughlin v. O'Loughlin, 23 Va. App. 690, 694-95 (1994). However, Husband prevails in part in this appeal over the meaning of certain provisions of the parties' settlement agreement, so his appeal is not without merit. We, consequently, deny Wife's request for attorney's fees incurred in the appeal.

## III. CONCLUSION

The marital settlement agreement dictates that Wife is entitled to one-half of the marital share of Husband's ten-year retirement benefit plan payments "on an 'if, as, and when' basis." Because the plain language of the settlement agreement is clear on what the fractional share of the retirement benefit payments is (and the parties agreed that the fractional marital share is 34.16%), because the settlement agreement does not specify a different outcome if Husband retired on a different date than that anticipated and defined in the settlement agreement and does not explain

---

[4] Husband has claimed previously that he does not need to pay Wife any retirement benefits until she pays him half of the rent he claims that he advanced (and that Wife still owes him) for their daughter's apartment while she was in college. However, this issue was not part of the litigation that is currently before this Court on appeal, and Husband did not assign it as error on appeal. It is also not mentioned in the settlement agreement, and it is not now before this Court.

how to calculate each party's share based on that different unanticipated outcome, and because the agreement states that Wife shall be paid if, as, and when Husband is paid, we affirm the circuit court's holding that Husband should pay Wife one-half of the marital share (34.16%) of the full retirement benefit payments earned by Husband.

However, the circuit court erred in its interpretation of paragraph 15(D)(vi) of the settlement agreement. Because the law firm will not pay Wife directly, but only its retired partner, the preference established by the settlement agreement for direct apportionment between Husband and Wife is not possible without Husband being responsible to the IRS for all taxes owed on the payments that are paid directly to him (and noted on the Form K-1, which the law firm files with the IRS). Therefore, pursuant to the settlement agreement, we reverse the circuit court on this assignment of error and direct the circuit court to have Husband pay Wife her share of the retirement benefit payments "net of tax," with Wife's net share "to be calculated using the Husband's effective income tax rate."

Finally, in light of our holding, we remand the issue of the award of attorney's fees at trial to the circuit court for its reconsideration.

<u>Affirmed in part, reversed in part, and remanded.</u>